HAMMOND *v.* HAMBY.

4-4052

Opinion delivered November 18, 1935.

*Dene H. Coleman, John E. Miller* and *C. E. Yingling,* for appellant.

*Tom W. Campbell,* for appellee.

SMITH, J.   It is insisted that the judgment from which this appeal comes should be reversed for the following reasons:   (1) That the verdict upon which the judgment was based is unsupported by the testimony; (2-3) that the court erred in giving instructions numbered 1 and 3, and (4) that the verdict is so excessive as to demonstrate that it was the result of passion and prejudice.

The sufficiency of the testimony will be considered in connection with the instruction numbered 1, which recites the theory upon which the case was tried.   It reads as follows:   ''The jury is instructed that if you find from a preponderance of the evidence in this case that on the morning of November the 10th, 1933, B. O. Ward was driving his automobile on Highway 67 at a point a short distance southwest of Donaldson, Arkansas, and that the plaintiff, T. W. Hamby, was then and there riding in said automobile, and that said T. W. Hamby had been employed by the said B. O. Ward to accompany him on said trip, and that the portion of said highway on which the said B. O. Ward was then and there driving his car, if you find that he was then and there driving his car upon said highway, was upon a dump and that the said B. O. Ward was then and there driving said automobile at an excessive, unreasonable, reckless and dangerous speed and at such speed as to endanger the safety of the occupants of said car, and that the said B. O. Ward then and there recklessly failed to keep said car under control and then and there drove said car off the pavement and shoulder of said highway and off of said dump and into the ditch on the right hand side of said high-

way and thereby threw the plaintiff out of said automobile and injured him, and that in driving said automobile in said manner, if you find from a preponderance of the evidence that the said B. O. Ward did then and there drive said automobile in such manner, the said B. O. Ward failed to exercise ordinary care for the safety of the occupants of said automobile, and that the plaintiff was not guilty of contributory negligence, you should find for the plaintiff in this case and assess his damages as hereinafter explained in these instructions.''

The first objection made to this instruction is that it is abstract, in that the testimony did not warrant the submission to the jury of the questions of fact there hypothetically recited. We do not think so. That there was such testimony appears from the summary thereof hereinafter made.

Another objection to the instruction is that it is involved, long and confusing. But not sufficiently so as to be confusing and misleading, and it contains no erroneous declaration of law.

It is not open to the objection made that it required Ward, the driver of the car, to exercise a high degree of care, rather than to exercise ordinary care. The instruction required the jury to find that Ward failed to exercise, not a high degree of, but ordinary, care before finding for the plaintiff.

The insistence that the instruction was abstract, in that there was insufficient testimony upon which to predicate it, may be answered by saying that the testimony in appellee's behalf was to the following effect: The concrete pavement at the point where appellee was injured is 18 feet wide, with dirt shoulders 8 feet wide on each side, making the highway 34 feet wide. The shoulders were on a level with the concrete. The road was on an embankment about 15 feet high. The car was owned and driven by Ward. Appellee rode on the front seat with Ward. Roy Boles and Clyde Alfrey sat on the rear seat of the car. Ward and Alfrey were killed when the car ran off the road.

Boles testified that a truck approached coming from the opposite direction, and that its driver flashed its

lights just before reaching the car in which they were riding. It was very early in the morning. The truck was being driven to the left of the center line of the highway, but Ward had 14 feet of level space between the passing truck and the right-hand edge of the highway. When the truck's lights were flashed, Ward turned his car to the right, and its right wheels ran over on the dirt shoulder. Measurements subsequently made show that Ward's car ran 88 feet from the point where its right wheels got on the dirt shoulder to the point where all four of the wheels got on the dirt shoulder, and the truck and the car passed each other in this space.

Appellee's testimony is to the further effect that, after passing the truck, Ward, instead of pulling back upon the pavement, which was then clear of traffic, ran 72 feet farther with all four of the wheels on the dirt shoulder, and that, "after angling back towards the pavement for 30 feet, never getting upon it, his (Ward's) car straddled the north edge of the shoulder 180 feet, and then it made three bounces through space about 87 feet to the side of the dump, where it made a final jump of 50 feet." The car then ran off the road, and two of the occupants were killed and the other two injured, Boles less severely than appellee.

The testimony is in irreconcilable conflict as to why the car left the road. According to appellee, the rapid speed at which the car was being driven was accelerated as the car passed the truck, and Ward lost control of his car. According to the testimony on appellant's behalf, the car was not being driven at an excessive speed, and appellee was drowsing as the car passed the truck. He was suddenly aroused and grabbed the wheel, and this action caused the car to leave the road; otherwise it would have been driven back upon the concrete. The nurse who attended appellee during his confinement in the hospital testified that he gave this account of his injury after he regained consciousness and became rational. Boles testified that he saw appellee reach for the wheel, but did not know whether he grabbed it. Appellee denied making the statement to the nurse, and testified that he did not touch the wheel. These con-

flicts in the testimony were submitted to the jury and are concluded by the verdict.

The testimony thus briefly summarized is sufficient to carry to the jury the question whether appellee was injured as the result of Ward's negligence, and also to support the finding that appellee himself was guilty of no negligence contributing to his injury.

Instruction numbered 3, which was given over appellant's objection and exception, reads as follows: "You are instructed that if you find from a preponderance of the evidence in this case that B. O. Ward was driving on the dump on Highway 67 where the wreck occurred at a speed greater than thirty-five miles an hour, then that would be *prima facie* proof that the said B. O. Ward was then and there driving at a negligent and unlawful speed. By this is not meant that if you find the deceased, Ward, was driving in excess of thirty-five miles per hour, plaintiff would be entitled to recover in this case. It is for the jury to determine from the evidence and all the surrounding circumstances, whether or not this wreck was caused by the negligence of Ward in driving at an excessive, dangerous or reckless rate of speed at the time of the wreck, and as to whether or not the speed at which he was driving was, in fact, excessive, dangerous or reckless."

This instruction was obviously based upon act 223 of the Acts of 1927, pages 721 *et seq.* It is entitled "A Uniform Act Regulating the Operation of Vehicles on Highways," and is a very comprehensive act, consisting of 71 sections.

In the recent case of *Rogers* v. *Woods,* 184 Ark. 393, 42 S. W. (2d) 390, a somewhat similar instruction, based upon this act, was reviewed. What we there said disposes of the objections urged to this instruction numbered 3, and we quote from that opinion at some length for this reason as follows:

"By § 4 of act 223 of the Acts of 1927, subdivision (a), the rule of conduct for persons driving vehicles on the highway is prescribed, *i.e.,* that he 'shall drive the same (vehicle) at a careful and prudent speed not greater than is reasonable and proper having due regard to the

traffic, surface and width of the highway, and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb, or property of any person.'

"By subdivision (b) of the same section it is provided that in all cases where the speed at which a vehicle is driven shall not exceed the speed limits specified in the act, the driver's conduct shall be *prima facie* lawful.

"By subdivision 8 it is provided that it shall be *prima facie* unlawful to exceed the speed limits, thirty-five miles per hour being the extreme limit.

"Upon the foregoing statute is based the instruction of which complaint was made. As stated by the appellant, it creates no civil liability, but imposes a penalty for its violation. Yet an injured party, in seeking redress by common-law action, may base such action on the evidence found in its violation; and, as such action is based not on the statute but on the evidence found in its violation, a literal adherence to its language is not essential, though perhaps to be desired.

"According to the statement made in Huddy's Enc. on Automobile Law, vol. 3-4, page 61, the great weight of authority is to the effect that a violation of the statute such as the above is negligence *per se,* but in this State the rule is that it is not negligence *per se,* but is evidence of negligence (*Mays* v. *Ritchie Gro. Co.,* 177 Ark. 35-37, 5 S. W. (2d) 728), which casts upon the defendant the burden of proof to establish a compliance with the rule of conduct fixed by the statute, and which would be ordinary care within its meaning. *Herring* v. *Bollinger,* 181 Ark. 925, 29 S. W. (2d) 676."

It is finally and very earnestly insisted that the verdict, which was for $10,000, is excessive. The same irreconcilable conflict appears in the testimony upon this issue as is found in that relating to the question of liability. The undisputed testimony shows that appellee was violently shocked, and that he was rendered profoundly unconscious. He was carried to the hospital at 7:35 on the morning of November 10, 1933, and remained as a patient in the hospital until the afternoon of December 4, 1933, when he was carried to his home in an

ambulance. For several days and nights appellee was constantly attended by two nurses, and was visited daily by two physicians. During this time he was either unconscious or only semi-conscious. His kidneys acted involuntarily, and the hospital record of appellee's ninth day in that institution recites that he "voids freely, but can't tell when he needs to." These records also recite that on the sixth day appellee recovered consciousness sufficiently to ask where he was and how he came there. The record of the tenth day recites "Mind clearer today. Complains of hurting when he turns over. Restless during latter part of night." The record of the fourteenth day recites that appellee was given a hypodermic to relieve his intense pain, and that he unsuccessfully tried to get out of his bed.

Appellee testified that prior to the injury he weighed 210 pounds, but that he had lost 50 pounds in weight. He testified that his memory had become poor, and his vision impaired, and that he was unable, because of his nervousness, to do any kind of work for any considerable length of time.

Appellee is 29 years of age, and lives with his father, who testified that if his son worked in the morning he would be unable to work in the afternoon, and that his son's mind was affected, this being manifested by the fact that his son would sometimes begin to tell something, when he would become confused as to the continuity of his ideas and of the events which he was relating.

Appellee became the patient about the 1st of March, 1934, of Dr. E. T. Ponder, who makes a specialty of mental and nervous diseases, and had consulted this physician an average of once every two weeks since that time up to the date of the trial, which occurred January 23, 1935. This doctor stated that "It has been my experience that the man that has received the terrific injury that the hospital record showed he did receive that his injury is permanent. There is a change in the brain caused by this accident."

Upon a consideration of this testimony we are unable to say that the verdict is so excessive that it must

be reduced, and, as no error appears in the record, the judgment must be affirmed, and it is so ordered.