HOUCK *v.* MARSHALL.

4-5539                                                     132 S. W. 2d 181

Opinion delivered October 9, 1939.

*Daggett & Daggett,* for appellants.

*Hal B. Mixon,* for appellee.

HOLT, J. At about eleven-thirty on the morning of June 5, 1938, appellant, C. N. Houck, while returning in his automobile to Marianna, Arkansas, westwardly on highway No. 79, at a point on a curve in said highway, collided with another automobile which was being driven by a negro, Harper Rouzie. The highway was made of gravel and about twenty feet wide.

As a result of this collision, plaintiff, Lester Marshall, suffered injuries, which were made the basis of a suit against appellants, and resulted in a substantal recovery in favor of appellee.

Appellants, on this appeal, earnestly insist, first, that there was no substantial evidence to support a recovery on behalf of appellee; and, second, that the trial court erred in giving plaintiff's instruction No. 5 over the specific objections of defendants. No complaint is made as to the amount of the recovery.

Appellee, plaintiff below, alleged in his complaint that defendants were negligent in driving on the wrong, or south side of the highway in question at a reckless and excessive speed and in failing to avoid the collision

and consequent injuries resulting by exercising ordinary care, after discovering the dangerous position of appellee.

There were four witnesses to the collision that resulted in the injuries to appellee: defendant, C. N. Houck, driving alone, and the three negroes, Harper Rouzie, driver of the other car which collided with Mr. Houck's car; the owner of the negro car, Matt Stanford, riding at the time on the front seat with Rouzie, and the plaintiff, Lester Marshall, who was riding on the rear seat of the negro car.

The testimony, as reflected by this record, is to the following effect:

Harper Rouzie testified: "We was going home when that fellow was coming in his car, Mr. Houck, and he was making sixty-five or seventy miles and I pulled up on the gravel and I couldn't get any further, I went on my high side (the south side) and he come on the high side around the curve. . . . A small curve, a slanting curve like. . . . Q. About how far in front of you was that automobile when you first saw it? A. It looked like it was fifty or sixty yards. . . . Q. How fast were you driving? A. About fifteen or twenty miles. . . . I didn't do nothing but pull on my side and the car was coming around the road and I said, 'He is not going to turn over at all.' He kept coming on and he turned on the far side and cut straight on to us. Q. Was that done suddenly or not? Where was the other car when you first saw it, what side of the road was it on? A. Just about the middle of the road, he was on the high side of the road too."

Matt Stanford testified: "When I got in the car I looked and seen the car we were in was driving fifteen or twenty miles an hour. There was a bank on the right-hand side and I seen a car coming and I said, 'Here comes a car,' it was driving pretty fast and he slightly come into us. . . . He come in by gravitation. Q. How far was the car away when you first saw it? A. About sixty-five or seventy yards. Q. Can you estimate the speed of that automobile then? A. I guess sixty or

seventy miles an hour, I don't know, it was running pretty fast. Q. How fast was your car going then? A. About fifteen or twenty." He further testified that the negro car was on the right-hand side of the road when they first saw the Houck car and that the Houck car was about the middle of the road coming around the curve toward them, and that the car was on the right-hand side of the road at the time of the collision.

Appellee, Lester Marshall, testified that he first discovered the Houck car at about a distance of seventy-five or eighty yards. There was a short curve where the collision occurred. We were on the right-hand side of the road at the time and traveling about fifteen or twenty miles per hour. The Houck car was coming in gradually to us. "Q. At the time the car ran into you, or at the time of the collision between the two automobiles, was your car still on the right-hand side of the road? A. Yes, sir. Q. Was it moving or stopped? A. He went to getting on the brakes when he seen the car coming and turning and making pretty fast speed, this boy was getting in on the brakes all the time."

Appellant, C. N. Houck, testified: "I was coming toward Marianna, that would be coming west on highway No. 79, near Poinsett Spur. The curve is a long curve, it is possibly a half mile around the curve, and just about the time I reached Poinsett Spur crossing I noticed the car approaching me, I would say that the car was about two hundred yards distance away. I was on my right-hand side of the road, which was the north side of the road and the inside of the curve. The car that was approaching me was also on the inside of the curve and the north side of the road, it was on my side of the road. . . . We were each on the same side of the road. . . . We were on the inside of the curve. . . . I immediately started to apply my brakes and I realized he was on the wrong side of the road as he approached me. My first thought, of course, was that he would immediately get over on the other side of the road. . . . Which would have been the south side. The car seemed

to have a weaving tendency to it, as we approached he came right back over to the north side of the road, at that time we were getting pretty close together and I realized we were going to have a collision and I got my car over to the right just as close as I could and not go in the bayou, Cow Bayou is on the right-hand side of the road coming toward Marianna, that is the inside of the road or the north side of the road. I couldn't get over any farther on account of the bayou. The bayou was almost full of water and the ditch was right at the edge of the gravel. The car that approached me, possibly, just before the impact came turned off a little bit to their right, so the collision when it came was not a perfect head-on, their car struck and it took off the lights and running board and it struck the corner of my car, the body of my car. . . . Q. As you approached this curve and noticed that car was either in the center or on the wrong side of the highway did you start applying your brakes? A. Yes, sir. Q. Did you materially reduce the speed of your car? A. Yes, sir, because I saw they were on my side of the road. . . . Q. At the time of the impact how fast was your car moving? A. I don't believe I was going over ten or fifteen miles an hour, I had almost come to a stand. When they struck me my car didn't move, my car was straight in the road, it didn't move forward or backward."

It is our view that the testimony, when considered in its most favorable light to the appellee, as presented by the record, is of a substantial nature and sufficient to take the case to the jury.

We have reached the conclusion, however, that the trial court erred in giving plaintiff's requested instruction No. 5, and that for this reason the judgment must be reversed and the cause remanded for a new trial.

The instruction complained of is as follows: "You are instructed that if you find from the evidence that the driver of defendant's automobile discovered the peril of the plaintiff and by the exercise of ordinary care and

caution, could have avoided a collision and failed to exercise such care and caution, then in that event, he would be guilty of negligence and the plaintiff is entitled to recover in this action, regardless of any contributory negligence on the part of the plaintiff, or the driver of the automobile in which plaintiff was riding.''

Defendants objected specifically to this instruction on the grounds "that there is no evidence to present the doctrine of discovered peril and no evidence to show that the collision could have been avoided, in the exercise of reasonable care after the peril, if such existed or was discoverable, was actually discovered, and because the discovered peril doctrine does not preclude contributory negligence on the part of the plaintiff, and because it is in conflict with defendants' instructions No. 6 and No. 4.''

Instruction No. 4 is as follows: ''If you should find from the testimony that defendant, Houck, while driving westwardly on the north or right side of the highway, discovered the car in which plaintiff was riding approaching from the west or the north, or wrong side of the highway, and, anticipating that the driver of the approaching car would return to the south, or proper side of the highway, he (Houck) failed and refused to swerve his car to the south, or wrong side of the highway in an effort to avoid the collision, then you are instructed that defendants were not negligent because of Houck's failure to take his car to the south or wrong side of the highway.''

Instruction No. 6 is: ''In this particular case any act of negligence on the part of the plaintiff which caused or directly contributed to his injuries would be a complete bar to his right of recovery against the defendant herein, and you are so instructed.''

Under the facts in the instant case we are of the view that the discovered peril, or the last clear chance doctrine, does not apply and that the court, therefore, erred in giving plaintiff's instruction No. 5. We think this is a case wherein the simple question of negligence and proximate cause should be applied.

Here we have the drivers of two automobiles approaching each other on a twenty-foot gravel roadway, one on the wrong side of the road, and each car continuing without stopping until a collision occurs. This case is not similar to one where one of the parties might have been parked, and at a standstill, on the wrong side of the road, nor does it present one where a pedestrian steps in front of a moving car. In the instant case the driver of each car had a right to assume that the other would try to avoid a collision.

In the well-considered case of *Mosso v. Stanton*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943, relied upon by appellee, the court seems to have recognized wide disagreement as to the extent of the application of the last clear chance doctrine to the operation of trains, street cars, and the like on one hand, and automobiles on the other. The annotator who compiled the exhaustive annotations of more than one hundred pages in 92 A. L. R., finally, as to a situation similar to that in the instant case, concludes (page 140): "When, however, the *continuing negligence* of the injured person in failing to discover his own danger and move out of the danger zone stands over against the *continuing negligence* of defendant for failing to discover the situation and avert the accident, it is difficult to understand how the doctrine of last clear chance may be applied consistent with the proximate cause view."

Referring particularly to a situation where the doctrine may be made applicable to railroads, street railways and the like, he then further said:

"Even such considerations fail in the case, for example, of a collision between two automobiles of equal potentiality for harm. In such a case, as upon the present hypothesis, the parties are charged equally with the failure to discover the danger, and the negligence of the plaintiff in that regard continues at least as long as defendant's negligence, there seems to be no ground for applying the doctrine in favor of the plaintiff rather than the defendant, except that, as the event proved, it was the former rather than the latter who was injured."

We think this to be the correct view of the law in cases presenting facts similar to these in the instant case.

Instruction No. 5 appears clearly to be in direct conflict with instructions No. 4 and No. 6, which latter instructions were correct as applicable to the facts in this case.

For the error indicated, the judgment is reversed, and the cause remanded for a new trial.