### KISOR v. TULSA RENDERING CO. et al.
### Civ. A. 1075.

United States District Court
W. D. Arkansas, Fort Smith Division.
May 28, 1953.

Rex W. Perkins and Jeff Duty, Fayetteville, Ark., for plaintiff.

Shaw, Jones & Shaw, Fort Smith, Ark., David H. Sanders, Tulsa, Okl., for defendant.

JOHN E. MILLER, District Judge.

On March 27, 1953, plaintiff filed his complaint against the defendants in the Madison Circuit Court. Plaintiff alleged that he received personal injuries which were proximately caused by the negligence of Clarence Earl Barlow, a servant, agent and employee of the defendants; that the said Barlow, while acting within the scope of his employment, negligently and carelessly operated a truck belonging to defendant, causing said truck to collide with plaintiff's truck; that plaintiff was injured without fault on his part; and that he should recover of and from the defendants damages for the personal injuries he sustained.

The cause was removed to this Court, and on April 20, 1953, the defendants filed their answer in which they denied that they were guilty of negligence and affirmatively alleged that plaintiff was guilty of contributory negligence. The defendants further alleged that the accident was caused by the negligence of the operator of a third motor vehicle.

On May 25, 1953, the case was tried to the Court without a jury. At the conclusion of the trial the defendant, Tulsa Rendering Company, moved for judgment in its favor; plaintiff conceded that the said defendant was entitled to judgment and the Court entered an order dismissing the complaint of the plaintiff as against the Tulsa Rendering Company, and that defendant will not be mentioned further by the Court. The defendant, Collinsville Rendering Company, likewise moved for judgment in its favor, but the Court denied this motion.

At the conclusion of the trial the case was submitted to the Court, and now, after considering the pleadings, ore tenus testimony of the witnesses and exhibits thereto, the Court files herein the following findings of fact and conclusions of law, separately stated.

## Findings of Fact

### No. 1

The plaintiff, Dave Kisor, is a citizen of the State of Arkansas and resides in Madison County, Arkansas. The defendant, Collinsville Rendering Company, is a corporation organized under and pursuant to the laws of the State of Oklahoma. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

### No. 2

On January 31, 1953, Clarence Earl Barlow, age 50, was an employee of the defendant, Collinsville Rendering Company. He had been working for the defendant for approximately one year as a truck driver, but he had a total of three years experience as a truck driver. He worked during the day until about five days before January 31, 1953, when he was assigned to the night shift. On the night shift he was required to go from Collinsville, Oklahoma, to Fayetteville, Arkansas, where he would obtain a load of chicken entrails and haul them to the rendering plant of defendant at Collinsville, Oklahoma. On January 30, the day immediately preceding the date of the accident, Barlow retired at 7:30 a. m. and arose at 1:00 p. m. At 6:00 p. m. he left Collinsville on his regular trip to Fayetteville, Arkansas, but he was involved in an automobile accident at Claremore, Oklahoma, to such an extent that the truck that he was driving was disabled and he was forced to have the truck towed back to Collinsville and there he waited until about midnight to obtain another truck with which to make the trip. He obtained the truck, a 1952 International Two-Ton Truck, which was being driven by another employee. After obtaining the International truck, he drove to Fayetteville, Arkansas, and arrived there about 3:45 a. m., January 31, 1953. There he proceeded, without help, to load upon the truck 31 barrels of chicken entrails, each barrel weighing 350 to 400 pounds. He also shoveled 27 barrels of loose entrails in between the 31 barrels on the truck and covered the load with a tarpaulin. The load weighed 17,650 pounds, and defendant admitted in its brief that the truck was overloaded. Barlow left Fayetteville about 6:15 a. m. and drove on U. S. Highway 71 to Springdale, Arkansas, and after eating breakfast at Springdale, he resumed his trip to Collinsville traveling west on U. S.

Highway 68, and had proceeded on said highway in a westerly direction about three miles at the time of the accident.

Barlow was acting within the scope of his employment and was in the discharge of his duties as an employee at the time of the collision.

So far as the record shows, Barlow had had no experience in the driving of the International truck and he testified that he had not tested the brakes nor used them other than the usual and ordinary use in making the trip from Collinsville to Fayetteville and from thence to the point of the collision.

The truck was equipped with a tachometer which recorded the time the truck was moving and its rate of speed. This tachometer disclosed that the collision occurred about 8:15 and that the truck was moving at the rate of from 38 to 40 miles per hour at the time.

### No. 3

The plaintiff is 48 years of age and is now and has been, since boyhood, engaged in the canning, livestock and farming business in Madison County, Arkansas. He left his home in Madison County about 4:30 a. m. on the morning of January 31, 1953, driving a 1952 Ford truck owned by his son-in-law. The truck was loaded with walnut logs and was driven by plaintiff to Gentry, Arkansas, where he arrived about 7:00 a. m. After the logs were scaled and he had received the purchase price therefor, he left Gentry to return to his home. He traveled highway 59 south from Gentry to Siloam Springs, Arkansas, and there took U. S. Highway 68 and was traveling east on that highway when the collision occurred.

Immediately prior to the collision the plaintiff was driving in the south lane of the highway, which was his right side, at a rate of speed 25 to 30 miles per hour.

A Mercury automobile driven by James McCann, a student of the University of Tulsa, had been following the truck of plaintiff for a distance of from one-half to one mile immediately prior to the collision between plaintiff's truck and the truck of the defendant.

There was a fog along and upon the highway of varying density. At various places on the highway the fog was very thin while at others it was more dense. Apparently the fog increased in density in valleys and depressions, but at no place or time was the fog of sufficient density to prevent safe driving by the exercise of ordinary care on the part of the driver.

The Mercury automobile belonged to the father of Glen Wynn, Jr., and was occupied by the driver, James McCann, Glen Wynn, Jr., and two other students. They were on their way to Fayetteville, Arkansas, for a visit to a fraternity house.

The highway was straight and the collision occurred near a slight depression. A vehicle approaching the scene of the accident from the East would be traveling down a slight incline, but the testimony does not show that the incline was such as would necessarily increase the speed of such vehicle. The driver of the Mercury desired to pass the plaintiff's truck and he turned his car to the left preparatory to passing when he saw defendant's truck approaching from the east at a distance of from 100 to 150 yards. The driver of the Mercury immediately removed his foot from the accelerator and was preparing to drop back behind the plaintiff's truck or to drive off of the highway to his left in order that the truck of the defendant might pass along and upon the north lane of the highway or its right side. However, the driver of the Mercury noticed that the defendant's truck at that time was about half way over the center line and was gradually turning into the south lane, which was the traffic lane occupied by the plaintiff. When the driver of the Mercury observed the situation and actions of the defendant's driver he continued to occupy the north traffic lane and passed the two trucks as they collided.

The truck of the plaintiff, the Mercury automobile and the truck of the defendant all had their headlights dimmed and there was no perceptible glare from the lights. Mr. McCann and Mr. Wynn both testified that the fog was light and that the entire highway right of way, fences, ditches, trees and other things were clearly visible to

anyone. The first person that appeared on the scene was Mr. W. R. Gibson, a driver for the Continental Bus System. He arrived at the scene at 8:25 and immediately after the collision. The collision occurred at or very near the south line of the pavement. The truck of plaintiff was struck on the left side immediately behind or near the cab. The right hand wheels of the plaintiff's truck were on the south shoulder and the left front wheel of the defendant's truck was likewise on the south shoulder.

The impact of the collision was sufficient to turn defendant's truck onto its right side and thus spilled the contents of its load on the plaintiff's truck and covered the plaintiff and his truck with chicken entrails, and in fact strew the entrails down the road to the west for a distance of 20 to 25 feet. The plaintiff's truck caught fire and he received a slight burn on his face before being extricated therefrom. Mr. Gibson was giving most of his attention to the use of a fire extinguisher as about that time Ed Curtis and he, with the help of the occupants of the Mercury automobile, succeeded in extricating the plaintiff from his truck.

### No. 4

Someone notified the Chief of Police at Springdale of the collision and he in turn called and obtained the services of W. C. Struebing State Patrolman. They arrived at the scene at 8:45. At that time the plaintiff had been removed from his truck and was lying on the south shoulder of the highway in an unconscious or semi-conscious condition.

The uncontradicted testimony showed that the pavement at the scene of the accident was 19 feet wide. On the north side of the highway there is a 7 foot 2 inch shoulder, then a gradual two foot slant leveling off into an 18 foot wide area. On the south side of the highway there is an 8 foot shoulder, but the ditch on that side is more pronounced than the one on the north side.

The State Patrolman and Mr. Wayne Hyden, Chief of Police, testified that in traveling from Springdale to the scene of the accident the parking lights on their automobile were burning but that these lights were not necessary except as a matter of precaution.

The State Patrolman and Mr. Hyden made certain observations and their testimony is undisputed that the defendant's truck began a gradual and sweeping turn to its left and onto plaintiff's side of the highway at a distance of 108 feet east of the point of impact. The right tires on the defendant's truck made a more pronounced impression on the pavement than the tires on the left hand wheels. The driver of defendant's truck testified that he did not know if he applied the brakes, but the testimony of the State Patrolman and the Chief of Police indicates that the brakes of defendant's truck may have been applied, although more weight would have been thrown on the right hand wheels of defendant's truck while it was making the sweeping turn to the left and that may account for the deeper impression made by the right hand wheels on the pavement.

The driver of defendant's truck testified that he saw the headlights of the Mercury automobile when it came from the back of the plaintiff's truck and that he became so frightened he did not know what to do. He had, prior to the date of the accident, made five trips to Fayetteville, Arkansas, from Collinsville, Oklahoma. He did not say whether the trips were made during the night time or day time.

He further testified that he thought there was a ditch on the north side of the highway and that he chose to turn to the left when he saw the headlights of the plaintiff's truck and the Mercury automobile. The testimony revealed nothing that would have prevented the defendant's truck from being turned to the right or from stopping when he saw the Mercury automobile and the plaintiff's truck since most of the witnesses testified that they saw the defendant's truck at a distance of from 100 to 150 yards to the east and no doubt the driver of defendant's truck was approximately that distance from the plaintiff's truck when the Mercury automobile undertook to pass the plaintiff's truck, and when he saw the plaintiff's truck and the Mercury automobile, if he were keeping a lookout.

When it became apparent to plaintiff that the driver of defendant's truck intended to continue to occupy the south traffic lane, he, the plaintiff, applied his brakes and turned from the south lane, which was his right side, in an effort to reach the shoulder of the highway ahead of the defendant's truck, but failed to do so and the collision resulted.

### No. 5

At the time of the collision the driver of defendant's truck had not slept since 1:00 p. m. on Friday, January 30, and in the meantime had gone through one collision near Claremore, Oklahoma, and had been forced to return to Collinsville and obtain the International truck and resume his journey to Fayetteville, Arkansas, where he loaded the truck and started back toward Collinsville. He had driven a total of 169 miles and apparently had no rest except during his breakfast period at Springdale. He further testified that the light beams from the defendant's truck struck the pavement about 15 or 20 feet from the truck and that his vision was limited to that distance, while the testimony of other witnesses was to the effect that they saw the defendant's truck approaching at a distance of 100 to 150 yards.

The testimony of Mr. Barlow was to the effect that he became frightened and for some reason chose to go to the left rather than to remain on his side of the highway or to leave the highway on the right or north side. His vision was not affected by the headlights of either the plaintiff's truck or the Mercury automobile, and he gave no reason for not stopping except that he was "scared and thought he would be killed."

### No. 6

The plaintiff had, prior to the time of the accident, enjoyed good health, although he was afflicted to some extent with arthritis of the cervical vertebra. His life expectancy at the time of the accident was 22.88 years. He had been accustomed to doing a great deal of manual labor in the operation of his canning plant and farm. The shock from the collision was severe. His right forearm was fractured and the services of an orthopedic surgeon, Dr. Coy C. Kaylor, were required. The left clavicle was broken. Four ribs on the right side were fractured. There was a moderate laceration on the lower lip. His scalp was lacerated. There was a mild brain concussion resulting from the laceration or blow on the head. He received some burns on his face. He was hospitalized for a period of 11 days and during the first two days he was irrational, if not unconscious. When taken to the hospital he was bleeding from the face and head, and as above stated was suffering from severe shock. It was necessary to place a metal pin in the right forearm and thus the arm and wrist were immobilized for about three months. There has been some atrophy of the muscles of the wrist and the right hand. The fractures of the ribs and the clavical have apparently healed, although they are not as strong as they were before the accident, and the muscles are subject to spasms. He has suffered a great deal of pain as a result of the injuries and still complains of severe headaches. He is afflicted with nausea, dizziness, and pains, particularly in the shoulders and arms. He is required to urinate very frequently, particularly during the early part of the night. He has not fully recovered from the shock and has developed a nervous condition and is naturally fearful of riding in automobiles. The testimony of Dr. Coy C. Kaylor, Dr. Friedman Sisco, and Dr. Fred Krock discloses that the injury to his right forearm and wrist is 20 per cent permanent. Dr. Krock, who testified on behalf of the defendant, stated that he believed that plaintiff should have a normal recovery from the other injuries within a period of months.

The plaintiff was earning, at the time of the injury, approximately $10,000 net per year in the operation of his farm and canning factory. As is usual in such cases, the owner performs a great deal of work, both in an executive and a manual capacity. He has not been able to perform his usual duties and will not be able in the future to perform the manual labor that he has been accustomed to perform over a period of years.

The arthritic condition in the cervical vertebra was aggravated to some extent by the injuries, but the testimony does not disclose the extent of the aggravation. He has already incurred hospital expenses in the sum of $212.90, including X-rays etc., and doctor bills in the sum of $450. Dr. Kaylor testified that he will be required to incur other medical expenses in the future but did not express an opinion as to the amount of such expenses.

## Discussion

The plaintiff contends that he received injuries which were proximately caused by the negligence of the defendant's driver in (1) driving too fast, (2) failing to keep a proper lookout, (3) failing to exercise ordinary care after discovering plaintiff's truck in a position of peril, (4) driving upon the wrong side of the highway, and (5) driving for a period of more than 18 hours before the accident occurred.

The defendant contends that its driver was faced with a sudden emergency, not created by his own negligence, and that he exercised ordinary care under the circumstances then existing. The defendant also alleged in its answer that the plaintiff was guilty of contributory negligence.

■ The accident occurred in the State of Arkansas and therefore the law of that State governs in determining the substantive rights of the parties. The rules of law applicable to the instant case are firmly ingrained in Arkansas jurisprudence.

■ It is elemental that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that he received injuries which were proximately caused by the negligence of the defendant's agent while acting within the scope of his employment. Roark Transportation, Inc. v. Sneed, 188 Ark. 928, 68 S.W.2d 996. In the instant case the parties stipulated that the driver of defendant's truck was acting within the scope of his employment, and thus the question for decision is whether the said driver was negligent, and if so, was his negligence a proximate cause of the injuries received by the plaintiff.

■ Negligence, under Arkansas law, is the failure to do that which a person of ordinary care and prudence would do under the same or similar circumstances, or the doing of which a person of ordinary care and prudence would not do under the same or similar circumstances. St. Louis-San Francisco Ry. Co. v. Ward, 197 Ark. 520, 524, 124 S.W.2d 975; Self v. Kirkpatrick, 194 Ark. 1014, 1022, 110 S.W.2d 13.

■ Negligence is the proximate cause of an injury only if the injury is the natural and probable consequence of the negligent act and ought to have been foreseen in the light of attending circumstances. Ozark Packing Co. v. Stanley, 211 Ark. 749, 202 S.W.2d 352; Hook, Administrator v. Reynolds, 203 Ark. 259, 261, 156 S.W.2d 242; Southwestern Bell Telephone Company v. Adams, 199 Ark. 254, 261, 133 S.W. 2d 867.

Under the Arkansas law, commonly referred to as the Rules of the Road, no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing, and in no event shall a person drive a truck carrying seven and one-half tons or more at a speed in excess of thirty-five miles per hour. Section 75–601, Arkansas Statutes, 1947, Annotated.

Section 75–601, supra, further provides that:

"The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when * * * special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Section 75–608, Arkansas Statutes 1947, Annotated, provides as follows:

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right and upon roadways having width for not more than one line of traffic in each direction each driver

shall give to the other at least one-half of the main traveled portion of the roadway as nearly as possible."

Section 75–618(a), supra, provides:

"No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement."

Section 75–607, supra, provides:

"Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows" (none of the exceptions are pertinent in the instant case.)

A violation of any of the foregoing statutes, while not conclusive of the issue, may be evidence of negligence on the part of the violator. In Shipp v. Missouri Pacific Transp. Co., 197 Ark. 104, at page 108, 122 S.W.2d 593, at page 595, the Court said:

"It is the settled rule in this state that violation of a traffic law, whether promulgated by municipal or state authority, may be shown, but the fact that such law has been violated at a time and in circumstances which give rise to a contention that injury has been occasioned thereby is not to be asserted as creating liability as a matter of law. Such violation is evidence of negligence, but is not conclusive of the issue."

See also, Hammond v. Hamby, 191 Ark. 780, 785, 87 S.W.2d 1000; Union Securities Co. v. Taylor, 185 Ark. 737, 48 S.W.2d 1100; Herring v. Bollinger, 181 Ark. 925, 929, 29 S.W.2d 676.

A person operating a motor vehicle upon the highways of the State of Arkansas must keep a lookout for vehicles or persons who may be upon the highway and must keep his motor vehicle under such control as to be able to check the speed or stop it, if necessary, to avoid injury to others when danger is apparent. Craighead v. Missouri Pacific Transp. Co., 8 Cir., 195 F.2d 652, 656; Livingston v. Baker, 202 Ark. 1097, 155 S.W.2d 340; Loda v. Raines, 193 Ark. 513, 517, 100 S.W.2d 973; Lockhart v. Ross, 191 Ark. 743, 752, 87 S.W.2d 73.

When a person is suddenly confronted with an emergency, not created by his own negligence, he is not held to the same accuracy of judgment as would be required of him under ordinary circumstances, and if he acts as a person of ordinary prudence would act under the circumstances then existing, he is not guilty of negligence, even though it might subsequently appear that it would have been wiser to have chosen some other course of action. Coca Cola Bottling Co. of Blytheville v. Doud, 189 Ark. 986, 76 S.W.2d 87; Riceland Petroleum Co. v. Moore, 178 Ark. 599, 12 S.W.2d 415; Shipp v. Missouri Pacific Transportation Co., supra; Arkansas General Utilities Company v. Oglesby, 188 Ark. 564, 67 S.W.2d 180.

However, if the person's own negligence creates the emergency, then the emergency rule does not operate to aid him. Missouri Pacific Transportation Company v. Mitchell, 199 Ark. 1045, 137 S.W.2d 242; Riceland Petroleum Co. v. Moore, supra; Wells v. Shepard, 135 Ark. 466, 205 S.W. 806.

An illustration of the preceding rule may be found in Wells v. Shepard, supra, wherein the Court at page 469 of 135 Ark., at page 807 of 205 S.W., said:

"The automobile was going north, and it was the duty of the driver to have kept the automobile to the right of any vehicle he was approaching. It is claimed by the defendant that the chauffeur turned the automobile to the left to avoid striking a horse and buggy which was being driven south on the wrong side of the street, and also to avoid striking two persons who were walking across the street. The situation of these persons, it is contended, created an emergency, and that the chauffeur was not negligent under the circumstances in turning his automobile to the left.

"According to the testimony of the chauffeur himself, his brakes were not working well. In the first place, the jury might have found that he negligently turned his car too far to the left without checking its speed. The jury, too, might have found that if the chauffeur had had his automobile under perfect control, as he should have had, on a public street, such as the one in question here, he might have stopped his vehicle before striking the wagon and have prevented the injury. The testimony for the plaintiff shows that the automobile struck the watermelon wagon with such force as to knock it over against the curb 2½ or 3 feet away. One cannot shield himself behind an emergency created by his own negligence."

■ Where a defendant is negligent, but an intervening act of a third person is the sole proximate cause of injuries received by the plaintiff, the defendant's negligence necessarily would not be a proximate cause of the injuries and plaintiff could not recover from defendant. However, if the intervening act is one "the likelihood of which was definitely increased by the defendant's act, or one which in fact was caused by the defendant's act, it is not a superseding proximate cause of injuries incurred by reason of it," and the plaintiff would be entitled to recover damages from the defendant. Hill v. Wilson, 216 Ark. 179, 224 S.W.2d 797.

In the instant case plaintiff alleged in his complaint that the defendant's driver was negligent in failing to exercise ordinary care after discovering plaintiff's truck in a position of peril. However, under the evidence in this case the doctrine of discovered peril is singularly inapplicable. In speaking of the doctrine of last clear chance or discovered peril under the Arkansas law, the Court in Strickland Transp. Co. v. Gunter, 8 Cir., 175 F.2d 747, at page 749 said:

"The doctrine presupposes the negligence of the injured person."

And in Roland v. Terryland, Inc., Ark., 256 S.W.2d 315, 317, the Court said:

"The doctrine of discovered peril, or the last clear chance doctrine, insisted upon here by appellants as applicable, would, if applied, presuppose the negligence of Tom Roland.

"In a recent case, Shearman Concrete Pipe Company v. Wooldridge, 218 Ark. 16, 234 S.W.2d 382, 385, we defined it in this language: 'the so-called "discovered peril doctrine" or "the last clear chance doctrine", which doctrine, most succinctly stated, is that the contributory negligence of the plaintiff does not preclude a recovery for the negligence of the defendant when it appears that the defendant, by exercising reasonable care and prudence *after discovering* the perilous condition of the plaintiff, could have avoided the injurious consequences to the plaintiff.'"

See also, Houck v. Marshall, 198 Ark. 938, 132 S.W.2d 181; Sylvester v. U-Drive-Em System, 192 Ark. 75, 90 S.W.2d 232.

■ Since there was absolutely no evidence in the instant case which would indicate any negligence whatsoever on the part of the plaintiff, the doctrine of discovered peril is not applicable in his favor because he was never in a position of "peril" as is contemplated by the rule. And, for that matter, in view of the decision in Houck v. Marshall, supra, it is doubtful if the discovered peril doctrine would apply even if plaintiff had been guilty of contributory negligence.

In the instant case the defendant pleaded contributory negligence on the part of the plaintiff as a defense to his claim.

■ Contributory negligence is an affirmative defense and the burden is upon the defendant to prove by a preponderance of the evidence such contributory negligence on the part of the plaintiff, unless the proof introduced by the plaintiff establishes that he was guilty of contributory negligence. See, Snow v. Riggs, 172 Ark. 835, 290 S.W. 591.

■ Contributory negligence is the doing of something by the plaintiff which a person of ordinary care and prudence

would not have done under the same or similar circumstances, or the failure of the plaintiff to do something which a person of ordinary care and prudence would have done under the same or similar circumstances, and which conduct on the part of the plaintiff contributed, however slightly, in whole or in part, to the occurrence and injuries, and without which the occurrence and injuries would not have occurred. Kirby v. Swift & Co., 199 Ark. 442, 446, 134 S.W.2d 865; Kittrell v. Wilkerson, 177 Ark. 1174, 9 S.W.2d 788; Russ v. Strickland, 130 Ark. 406, 197 S.W. 709.

▮▮▮ The rule of damages applicable to personal injuries is stated in Coca-Cola Bottling Co. of Arkansas v. Adcox, 189 Ark. 610, at page 613, 74 S.W.2d 771, at page 772, as follows:

"The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and continuing disability as he had sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are unsusceptible of pecuniary admeasurement".

See also, Hot Springs Street Railway Company v. Hill, 198 Ark. 319, 128 S.W. 2d 369; St. Louis-San Francisco Railway Co. v. Herndon, 198 Ark. 465, 129 S.W.2d 954.

Therefore, if plaintiff is entitled to recover in this action, he should be awarded a sum that will reasonably compensate him for the injuries he has sustained, including conscious pain, suffering and mental anguish; pain, suffering and mental anguish he will endure in the future; medical expenses he has incurred and will incur in the future; loss of earnings; impairment of earning ability; and the permanent nature of the injury to his forearm.

Applying the above rules of law to the facts in the instant case, the Court is of the opinion that:

▮▮▮ The defendant's driver, Clarence Earl Barlow, was driving a truck that he was not familiar with and that was overloaded, at a time when he had not slept for a period of 19 hours. According to his own testimony he could only see 15 or 20 feet ahead of him, and yet he was driving the overloaded truck at a speed which was in excess of the maximum speed limit provided by law even under normal weather conditions. If the driver's testimony is true in every respect, he clearly was guilty of negligence, especially when the weather conditions, visibility and other circumstances then existing are considered, and his negligence was a proximate cause of the collision and injuries received by plaintiff. Had he been driving at a reasonable speed under the circumstances, keeping his car under proper control and keeping a proper lookout, the collision would never have occurred. It was the driver's own negligence which created the emergency he was confronted with, and the defendant cannot escape liability because of this emergency.

▮▮▮ Moreover, even if defendant's driver had not been negligent prior to the time he saw the oncoming vehicles, certainly in turning to the left in the path of plaintiff's truck he was not exercising ordinary care under the facts and circumstances then existing. There was nothing to prevent him from either turning to the right shoulder or from stopping his truck, and by the exercise of ordinary care on his part the collision would have been avoided.

Conclusions of Law

No. 1

The Court has jurisdiction of the parties to and the subject matter of this cause of action.

No. 2

The plaintiff was not guilty of contributory negligence.

### No. 3

The defendant's driver, Clarence Earl Barlow, was guilty of negligence in the operation of defendant's truck, and his negligence was a proximate cause of the injuries received by the plaintiff.

### No. 4

The said driver was acting within the scope of his employment, and the defendant is liable for the damages received by plaintiff as a proximate result of the negligence of its employee, Clarence Earl Barlow.

### No. 5

The plaintiff is entitled to recover of and from the defendant the sum of $16,500 and his costs.

A judgment in accordance with the above should be entered.