Saville W. REPPETO, Plaintiff,

v.

Walter D. RAYMOND and Anna Raymond, d/b/a Raymond's Poultry Farm, Defendants (Carl Reppeto, Third Party Defendant).

Civ. A. No. 759.

United States District Court
W. D. Arkansas,
Hot Springs Division.

May 7, 1959.

Patten & Brown, Little Rock, Ark., for plaintiff.

Nathan L. Schoenfeld, Hot Springs, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

On September 10, 1958, the plaintiff filed her complaint herein against the defendants, Walter D. and Anna Raymond, d/b/a Raymond's Poultry Farm, in which she alleged that on March 25, 1957, she was the occupant of a 1956 Cadillac automobile owned by her and driven by her husband, Carl Reppeto, in a westerly direction on U. S. Highway 70 approximately one mile east of Hot Springs, Arkansas, at which time the defendant, Anna Raymond, who was driving in an easterly direction on the same highway, negligently turned her 1954 Plymouth station wagon across the plaintiff's lane of traffic, causing a collision between the two automobiles. The complaint further alleged that the defendant Anna Raymond, was negligent in failing to yield the right of way, failing to make a signal of left turn, in slowing her vehicle at the time she was blocking the plaintiff's lane of traffic, in failing to keep a proper lookout, and in failing to keep her vehicle under reasonable control. The plaintiff also alleged that the defendant, Anna Raymond, was acting as an agent or servant for the defendant, Walter D. Raymond. She alleged various personal injuries and damage to her automobile as a result of the collision, and prayed judgment in the sum of $75,265.90.

In due course the defendants answered, denying the allegations of negligence. The defendants at the same time asserted a cross-claim against Carl Reppeto and a counterclaim against the plaintiff alleging that Carl Reppeto was guilty of negligence in driving at an unreasonable rate of speed under the circumstances, in failing to keep a proper lookout, and in failing to keep his vehicle under proper control. They also alleged that he was acting as agent and servant for the plaintiff, Saville Reppeto, and that his alleged negligence was imputed to her. The defendant, Walter D. Raymond, prayed for damages to his Plymouth automobile in the sum of $264 and the defendant, Anna Raymond, prayed for damages in the sum of $8,000 for alleged personal injuries against Saville Reppeto and Carl Reppeto, jointly and severally.

The plaintiff filed her reply to the counterclaim and the cross-defendant filed his answer to the cross-claim on the same day, both of which pleadings substantially reiterate the allegations of the complaint.

On April 21, 1959, the case was tried to the court without a jury. At the conclusion of all the testimony it was submitted and taken under consideration subject to the filing of briefs by the parties. The briefs have been received, and the court has considered all of the ore tenus testimony, the exhibits, the depositions introduced, along with the briefs, and now makes and files its formal Findings of Fact and Conclusions of Law.

### Findings of Fact

#### 1.

The plaintiff is and was at the time the complaint was filed a citizen of Texas. The defendants are citizens of Arkansas, residing in Garland County, Arkansas, and the cross-defendant, Carl Reppeto, is a citizen of Texas. The amount in controversy is in excess of $10,000.

#### 2.

On March 25, 1957, the plaintiff, Saville Reppeto, and her husband, Carl Reppeto, were driving in a westerly direction on U. S. Highway 70. The car was being driven by Carl Reppeto, but it was owned by the plaintiff, Saville Reppeto. As they approached the City of Hot Springs, Arkansas, and reached a point approximately two miles east thereof, they came over a rise or small hill on the highway and proceeded down a slight incline.

At approximately the same time the defendant, Anna Raymond, was driving a 1954 Plymouth station wagon loaded with several cases of eggs in an easterly direction on U. S. Highway 70. She intended to make a left turn across the highway to enter the driveway of an establishment known as The Pines. She was driving approximately 20 to 30 miles per hour, and prior to making the turn gave a signal of her intention to so do. The car immediately behind her was driven by Mr. Nick Sarres, and upon noting that she was about to turn, Mr. Sarres, appropriately slowed his vehicle. When Mrs. Raymond reached a point on the highway approximately 1,550 feet west of the rise or crest of the small hill, she stopped for the purpose of making her left turn. She succeeded in getting most of the station wagon across and off of the highway and into a private driveway at The Pines, when her vehicle was struck by the Cadillac driven by Carl Reppeto. At the point where the private driveway of The Pines intersects Highway 70, there is a slight drop off from the pavement on Highway 70 to the private driveway, and as Mrs. Raymond attempted to enter the driveway, she slowed her vehicle in order to prevent a breakage of the eggs which she was carrying.

### 3.

The impact between the two vehicles occurred on the pavement on the north side of the highway and in the lane of traffic for the Reppeto vehicle. At the time of the collision, the rear of the Raymond vehicle did not occupy more than two or three feet of the westbound traffic lane on Highway 70. The Raymond vehicle was struck on the right rear fender by the right rear fender of the Cadillac driven by Carl Reppeto. In other words, the Reppeto vehicle immediately prior to the impact swerved to its left so that its right rear fender rather than the front end came in contact with the Raymond station wagon.

After striking the Raymond vehicle the Reppeto car proceeded in a southerly direction across the highway and came to rest in a private driveway on the south side of the highway, 96 feet west of the point of impact. Tire marks on the pavement left by the Reppeto vehicle began at a point 208 feet east of the point of impact.

From the point of impact vision is unobstructed in an easterly direction for approximately 1,544 feet to the crest of the rise or small hill in the highway, heretofore mentioned. Likewise from that hill or crest, vision is unobstructed to the point of impact. Nevertheless the cross-defendant, Carl Reppeto, did not see the Plymouth automobile driven by Anna Raymond until she was in the act of turning that vehicle across the road. Reppeto was driving his wife's automobile in excess of 60 miles per hour.

In 1956 Reppeto had had a heart attack, and in connection therewith, and possibly with other ailments as well, he was taking 18 medically prescribed pills or tablets a day.

### 4.

At the time of the collision the defendant, Anna Raymond, was attempting to deliver eggs in connection with the poultry farm which was owned and operated by her jointly with her husband, the defendant, Walter D. Raymond, and it was admitted at the trial that she was at the time acting as agent or servant for her husband and within the scope of her employment.

As stated previously, the 1956 Cadillac driven by Carl Reppeto was wholly owned by the plaintiff, Saville Reppeto. At the time of the collision they were on their way to Hot Springs, Arkansas, on a mutual vacation or pleasure trip. Prior to that time they had been visiting with friends and relatives of the plaintiff in Arkansas.

### 5.

Sometime after the collision but not immediately, the plaintiff, Saville Reppeto, developed muscular pains in her back and shoulders, and subsequently made complaints of other ailments which were diagnosed as arthritis. She also developed a high degree of nervousness and in a short time a skin condition or

rash which was diagnosed by one doctor as "lichen planus." A dermatologist, Dr. Joseph Murray Riddell, Jr., testified on deposition that "she has today a chronic itching eczema." He refused to confirm the original diagnosis, and stated that the cause of her present disorder is an outgrowth of lichen planus, but that the cause of lichen planus itself is unknown. Mrs. Reppeto's skin disorder is consistent with an allergic reaction.

Mrs. Reppeto had previously experienced menstrual and menopausal difficulties which had required surgery. She also previously had dermatitis of some type and had suffered from states of nervousness and anxiety. Sometime following the collision, she noted an increase in her nervous state and a considerable increase in her dermatitis or skin disorder. She also experienced muscular pains in her back and neck and other back difficulties which were diagnosed as arthritis. As indicated in the deposition of Dr. Joe R. Wise, she had previously had arthritis, and there is no indication of any serious aggravation. Her condition in this respect after the accident was, as stated by Dr. Wise, "virtually the same" as it had been previously.

The plaintiff has lost considerable time from her employment and has had considerable medical expense since the accident due to her skin disorder and nervousness. In view of the court's conclusions, however, it is not necessary to make a finding as to the amount of that expense.

The damage to the plaintiff's automobile was in the sum of $265.90.

6.

Following the collision, the defendant, Anna Raymond, remained at the scene of the accident for sometime and stayed there after a rain started, as a result of which she aggravated various pulmonary disorders to which she was susceptible. She later developed a recurrence of menstrual and menopausal symptoms which she had previously had, and which required extensive treatment and hospitalization. However, it is not necessary to determine the expense thereof because of other conclusions of the court.

The damage to the automobile owned by the defendant, Walter D. Raymond, was $264. The defendant, Anna Raymond, also suffered relatively minor muscular strains as a result of the accident.

### Discussion

As shown by the Findings of Fact, the issue herein is simply one of negligence and proximate cause. This case is governed by Act 191 of the Arkansas General Assembly of Arkansas for 1955, which provides that negligence on the part of any party claiming damages shall not bar recovery, but shall only reduce recovery in proportion to such negligence, if any. Act 191 has since been superseded by Ark.Stat.Ann., Secs. 27–1730.1 and 27–1730.2 (Supp.1957), which makes similar provisions except that recovery is barred if any claimant is guilty of negligence equal to or greater than that of the opposing party. Since Act 191 applies in this instance, however, a party may recover regardless of the degree of negligence of which he or she is guilty.[1]

1. Act 191 of 1955 with formal parts omitted reads in its entirety as follows:

"Section 1. In all actions hereafter accruing for negligence resulting in personal injuries or wrongful death or injury to property, including those in which the defendant has had the last clear chance to avoid the injury, the contributory negligence of the person injured, or of the deceased, or of the owner of the property, or of the person having control over the property, shall not bar a recovery, but the damages awarded shall be diminished in proportion to the amount of negligence attributable to the injured person or to the deceased or to the owner of the property or to the person having control over the property.

"Section 2. In any action to which section one of this act applies, the Court shall make findings of fact or the jury shall return a special verdict which shall state:

"(a) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

The ordinary rules of negligence law requiring due care need no elaboration. The defendant, Anna Raymond, was under a duty to use ordinary care in making a left turn across the highway and under a statutory duty to make such a turn only after ascertaining the safety of such a maneuver. Ark.Stat. Ann., Sec. 75–618 (1957 Repl.Vol.). A violation of this statutory requirement is evidence of negligence. See Kisor v. Tulsa Rendering Co., D.C.W.D.Ark. 1953, 113 F.Supp. 10.

It is apparent that from the point where she began her turn the defendant, Anna Raymond, could observe traffic for a distance in excess of 1,500 feet. As the findings show, the plaintiff's vehicle was traveling at a high rate of speed, but it was the duty of the defendant, Mrs. Raymond, to ascertain that fact before turning into its path, and the negligence of the driver of the plaintiff's vehicle did not relieve the defendant of the duty to remain in her own lane of traffic until it was safe to turn across the highway.

After having turned, Mrs. Raymond slowed her vehicle just prior to getting the rear wheels off the highway in order to avoid a jolt which might break the eggs in her station wagon. Under the circumstances this act was far from prudent, in view of the fact that the Reppeto vehicle was about to strike. Had Mrs. Raymond not slowed her vehicle while crossing the highway, the collision would in all probability have been avoided. Under the facts as found by the court, therefore, Mrs. Raymond was guilty of negligence in turning across the highway and into the Reppeto's lane of traffic when the Reppeto vehicle was approaching at a high rate of speed, and she was likewise guilty of negligence in failing to clear the high-

way as quickly as possible once she had entered into her turn.

The duty to use reasonable care under the circumstances, of course, fell equally upon Carl Reppeto, the driver of the plaintiff's vehicle. The court has found that he was driving in excess of 60 miles per hour. There is no competent testimony indicating any special speed restrictions, although one witness did testify that the speed limit was 45 miles per hour in the area of the collision. Absent testimony indicating that the area was a business district or otherwise comes within a special restriction, however, the highway speed restriction provided by law is 60 miles per hour. Ark.Stat.Ann., Sec. 75–601 (1957 Repl.Vol.). The court does not consider the conclusion of law offered by the witness that the speed limit was 45 miles per hour, but regardless of whether the speed limit was 45 or 60 miles per hour, the court is convinced that Reppeto was driving on a highway at a speed greater than was reasonable and prudent under the conditions then existing.

The statement of defendants in their brief, where they say "The criteria of a prudent operator is not his ability to skirt the outer edges of the law," succinctly outlines one of the tests to be considered in determining whether a driver is driving in the "reasonable and prudent" manner required by the statute. Ark.Stat.Ann., Sec. 75–601 (1957 Repl.Vol.). The court concludes that his speed was excessive, apart from the violation of speed restrictions.

Carl Reppeto was in poor health. He was taking an extremely large number of medications, some 18 pills or tablets each day. He was afflicted with a heart ailment. Under these circumstances it certainly was not the part of prudence to pursue the "outer edges of the law,"

"(b) The extent to which such damages are diminished by reason of contributory negligence.

"Section 3. All laws or parts of laws in conflict with this Act are hereby repealed."

This Act is held to apply to negligence claims arising after its effective date and until its repeal, even though it contains no saving clause, and the rights and liabilities accruing under the Act are fixed thereby notwithstanding its repeal. Chism v. Phelps, Ark.1958, 311 S.W.2d 297.

and certainly not to exceed the legal speed limit. There was testimony that he was driving at a speed approaching 80 miles per hour. The court does not accept this testimony as absolutely accurate, but does believe that he exceeded the speed limit and was driving at a speed which was excessive under all the circumstances, and that the collision could have been avoided had he been driving at a reasonable and prudent rate of speed.

Further, although Mrs. Raymond gave an appropriate arm signal of intention to turn for some distance prior to turning into the westbound lane, Mr. Reppeto did not see it and in fact did not even see her car until she was executing the turn. The only conclusion that can be reached in view of the facts is that Reppeto was guilty of negligence in failing to keep a proper lookout.

The defendant also insists that Reppeto was guilty of negligence in failing to act to avoid the collision after the defendant's peril was discovered. Apart from the fact that the "discovered peril" doctrine was eliminated under Act 191 of 1955, which governs here, that theory is inapplicable where an emergency exists and a party has no time to act to avoid the peril.

As shown in the Findings of Fact, the vehicle driven by Carl Reppeto was owned by the plaintiff, Saville Reppeto, and they were together on a trip for mutual pleasure. Under these circumstances Carl Reppeto's negligence is imputed to his wife. Since the Cadillac was owned by her, the inference is that she had the right to direct its use. Absent rebutting evidence, therefore, it must be concluded that either a joint enterprise or a master-servant relationship existed. In Watt v. United States, D.C. E.D.Ark.1954, 123 F.Supp. 906, 910, the court reviewed a number of decisions of the Supreme Court of Arkansas holding to this effect, and concluded at page 917 of 123 F.Supp.:

"Under such circumstances, we are convinced that Mr. Watt in driving the car was acting as the agent of his wife, and that she had the right to control and direct him in the operation of her car; that she may not in fact have done so is immaterial."

The negligence which the court has found attributable to Carl Reppeto, therefore, is imputed to the plaintiff, Saville Reppeto.

Both Mrs. Reppeto and Mrs. Raymond claimed rather extensive damages. However, the court concludes that in both instances most of the damages claimed were not a proximate result of the negligence of the opposing party and the collision which ensued. To say the least, neither party has sustained her burden of proving the proximate connection.

Mrs. Reppeto claimed muscle strains, an aggravation of pre-existing arthritis, and the development of a skin disorder. Undoubtedly she did suffer pain and discomfort as a result of the collision, which might be properly characterized as muscle strain. She likewise suffered arthritis and skin disorders, but there is no proof of any substantial kind to connect the arthritic changes and the dermatitis with the collision. The most that can be said is that they seemed to occur after the collision rather than before. Even that statement, however, must be qualified by the admission of Mrs. Reppeto that she may have had some skin condition at times before. Her medical expenses appear to have been related to her skin condition as does her loss of time from work. In view of Dr. Riddell's testimony that the cause of her condition was not known, the court feels that Mrs. Reppeto has failed to sustain her burden of showing that the skin condition was a proximate result of negligence of Mrs. Raymond.

A similar conclusion must be reached with respect to her arthritic changes. It seems to be accepted that trauma may cause arthritis or aggravate pre-existing arthritis. However, Dr. Wise indicated little or no change from her previous condition, and did not specifically at-

tribute any change which possibly existed to the accident, except to say that her nervousness made it worse.

Under these circumstances, Mrs. Reppeto must be held to have failed to show any proximate result of the collision except the soreness and strained muscles which she suffered.

Mrs. Raymond complains of severe symptoms of menstrual disorders and pulmonary troubles. Her physician, however, did not have a history of the collision until shortly prior to the trial, and did not attribute the disorders to it in any particular. Mrs. Raymond testified that she had previously had pulmonary and menstrual disorders. Further, it appears that her present pulmonary troubles resulted from the fact that she remained at the scene of the collision for sometime after it began raining. She offered no reason for remaining out in the rain. There is, in short, absolutely no evidence from which it can be inferred that her present disorders, difficult as they may be for her, are attributable to the collision. She did, however, suffer the usual soreness and muscle strain which was a proximate result of the collision.

From the foregoing, it is apparent that Mrs. Reppeto is entitled to recover the damage to her vehicle together with damages for the pain and suffering attributable to her strained muscles and soreness; that Walter D. Raymond is entitled to recover for damage to his station wagon and that Mrs. Raymond is entitled to recover for the limited pain and suffering attendant to her muscle strain and soreness.

## Conclusions of Law

### 1.

The court has jurisdiction of the parties and of the subject matter herein.

### 2.

The cross-defendant, Carl Reppeto, was guilty of negligence equal to 50 percent of the total negligence involved in the collision, and such negligence is imputed to the plaintiff, Saville Reppeto.

### 3.

The plaintiff, Saville Reppeto, suffered damages to her automobile in the sum of $265.90 and suffered damages for her personal injuries which were proximately caused by the negligence of the defendants in the sum of $500. Such damages must be reduced by 50 percent in accordance with Act 191 of 1955, and she is entitled to recover of and from the defendants, Walter D. and Anna Raymond, d/b/a Raymond's Poultry Farm, jointly and severally, the sum of $382.95.

### 4.

The defendant, Anna Raymond, was guilty of negligence equal to 50 percent of the total negligence involved in the collision, and such negligence is imputed to the defendant, Walter D. Raymond, d/b/a Raymond's Poultry Farm.

### 5.

The station wagon of the defendant, Walter D. Raymond, was damaged to the extent of $264, but such damages must be reduced by 50 percent in accordance with Act 191 of 1955, and he is entitled to recover of and from Saville Reppeto and Carl Reppeto, jointly and severally, the sum of $132. The defendant, Anna Raymond, suffered damages in the sum of $350 for her personal injuries which were a proximate result of the negligence of Carl Reppeto and Saville Reppeto. Such damages must be reduced by 50 percent as required by Act 191 of 1955, and she is entitled to recover of and from Carl Reppeto and Saville Reppeto, jointly and severally, the sum of $175.

### 6.

Carl Reppeto and Saville Reppeto are liable, jointly and severally, to Walter D. Raymond and Anna Raymond for their damages, and Walter D. Raymond and Anna Raymond are liable to Saville Reppeto, jointly and severally, for her damages. The damages entitled to be recovered by Walter D. and Anna Raymond should therefore be aggregated and set off against the damages entitled to be recovered by Saville Reppeto. The aggregated damages of Walter D. and Anna

Raymond, after reduction as required by Act 191 of 1955, are in the sum of $307. The damages of Saville Reppeto after reduction as required by Act 191 of 1955 are in the sum of $382.95. The defendants are entitled to set off the sum of $307 against the plaintiff's damages of $382.95. Thus the plaintiff is entitled to recover of and from Walter D. Raymond and Anna Raymond, d/b/a Raymond's Poultry Farm, jointly and severally, the sum of $75.95.

An order in accordance with the above is being entered today.