**UNITED STATES**

v.

**STATE OF ARIZONA et al.**
**No. 13722.**

United States Court of Appeals
Ninth Circuit.

June 30, 1954.
Rehearing Denied Oct. 18, 1954.

**390**

Asst. Atty. Gen., Warren E. Burger, Paul A. Sweeney, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., Jack D. Hayes, U. S. Atty., Phoenix, Ariz., John F. O'Mara, Asst. U. S. Atty., Tucson, Ariz., for appellant.

Ross F. Jones, Atty. Gen., Irwin Cantor, Robert C. Stubbs, Asst. Attys. Gen., for appellees.

Before DENMAN, Chief Judge, and LEMMON and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Roderick J. Krause, a boy scout from Bisbee, Arizona, was injured on April 2, 1949, on the Fort Huachuca Military Reservation in Southern Arizona while fooling with a live bazooka shell. Under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., an action was brought by the father, Joseph L. Krause, in his own right and as guardian ad litem for the infant.

Fort Huachuca has a long history as a United States military post. A month or so previous to the injury, the United States had deeded the land where the injury happened to the state of Arizona. It seems to be conceded that the unexploded bazooka shell, along with other war missiles, had been left behind by the United States military on an abandoned range. The area was not marked as dangerous. Ten months previously a U. S. Army bomb and shell disposal team had issued a certificate of clearance after supposedly dedudding and decontaminating the vicinity.

The plaintiff asserted negligence in leaving the former range without warning signs, negligent failure to dedud and negligent issuance of the clearance certificate.

In addition to denying plaintiff's allegations, the United States pleaded as a defense: "It wasn't our fault, it was the fault of the state of Arizona. The state of Arizona, as the owner, is the only one accountable."

About the same time, the United States filed a third party complaint against the state of Arizona and two of its agencies. In effect, it said, "If we are liable, Arizona must reimburse us." Arizona made a motion to dismiss upon grounds to which we will return.

Proceedings on the third party complaint were laid to one side while the basic claim of Krause against the United States was tried before the Honorable Claude McColloch, district judge, on special assignment to the United States District Court in Arizona. After making extensive findings of fact, the trial judge

on December 3, 1951, entered judgment for plaintiff, the father receiving from the United States $501.60 for himself and $3,500.00 for the infant. An attempt to appeal from this judgment failed, the record not having been sent forward in time. United States v. Krause, 9 Cir., 197 F.2d 329.

In 1952, the Honorable James A. Walsh, district judge, took charge of the issues on the third party complaint. After hearing arguments on October 6, 1952, he made the following minute order.

"The Third-Party Defendants' Motion to Dismiss the Third-Party Complaint comes on regularly for hearing this day. John F. O'Mara, Esq., Assistant U. S. Attorney. is present for the Government. Philip Munch, Esq., Assistant Attorney General of the State of Arizona, appears on behalf of the Third-Party Defendants. Said motion is now duly argued by respective counsel, and

"It is Ordered that the Motion of the Third-Party Defendants to dismiss the Third-Party complaint be and it is granted, and It Is Further Ordered that this case be and it is dismissed without prejudice as to the Third-Party Defendants."

The United States promptly appealed. This court, one judge dissenting, dismissed the appeal on the ground the notice of appeal was defective. United States v. State of Arizona, 9 Cir., 206 F.2d 159. The United States asked the Supreme Court for certiorari and got it. There it was summarily held the notice of appeal was adequate. United States v. State of Arizona, 346 U.S. 907, 74 S.Ct. 239, 98 L.Ed. ——.

Fortunately for Roderick, it may be assumed he has his money, but the aftermath of his case goes on and on. An examination of the record shows it has had the combined or successive attention of Roderick's two lawyers, of three United States attorneys, three assistant United States attorneys, four attorneys from the Department of Justice, two attorneys general of the state of Arizona, and six assistant attorneys general of Arizona. Two district judges, three panels (eight judges) of this court, and the United States Supreme Court have had their turns at it.

▮ Underlying the effort of the United States herein is a desire to maintain the principle that the United States may recover contribution or indemnity over against a sovereign state, where the state too is at fault, in an action in a United States district court where the liability of the United States is established under the Federal Tort Claims Act. That the United States may be either a third party plaintiff or a third party defendant where the liability of the United States arises under the Federal Tort Claims Act is settled by United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 97 L.Ed. 523.[1]

---

1. United States v. Yellow Cab Co., cited above, is a decision which resolves the conflict in cases from the Third Circuit (Howey v. Yellow Cab Co., 181 F.2d 967) and the Court of Appeals for the District of Columbia (Capital Transit Co. v. United States, 87 U.S.App.D.C. 72, 183 F.2d 825). In Howey v. Yellow Cab Co., supra, Pennsylvania law providing for contributions among concurrently negligent tort-feasors, the United States, joined as a third party defendant, was required to pay Yellow Cab 50 percent of plaintiff's judgment against Yellow Cab, the plaintiff having been injured in a collision of a Yellow taxicab and a United States mail truck. The implead-

ing of the United States having been permitted, local law was used in determining the right to contribution, an application of Erie Railroad Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. That there will be contribution in one state and no contribution in another where the United States becomes involved in third party practice prompts the author to make a strong argument (3 Moore's Federal Practice [2d Ed., 1948] 507 et seq.) that on a matter of such high importance to government fiscal policy, cases should be taken away from Erie v. Tomkins where the United States is involved and a federal rule of contribution adopted. The argument leans heavily on United

■ We hold herein that the judgment of dismissal of the third party claim should be affirmed, and we do it upon the ground that the third party complaint failed to state a claim for the reason that in Arizona the law of the state, in the absence of a contract, in a case such as this, does not permit one tort-feasor to recover contribution from another tort-feasor liable for the same injury.[2]

In the set of facts here, let us substitute X corporation as the prior owner of the training range at Fort Huachuca and Y corporation as the second owner, i. e., the owner at the time of the injury. Arizona law would not permit X corporation, its liability being established, to recover from Y corporation, also liable to the injured boy for the same tort. Schade Transfer & Storage Co. v. Alabam Freight Lines, 75 Ariz. 201, 254 P. 2d 800.

Returning to the record, we find that Arizona's motion to dismiss stated its grounds therefor as follows:

"1. The court lacks jurisdiction over the parties and the subject matter of the action.

"2. That said third party complaint fails to state a claim against third party defendants or any of them and fails to state facts sufficient, if true, to entitle the third party complainants to indemnity or any relief whatsoever.

"3. That cross complainant's complaint does not contain a statement of facts as distinguished from mere conclusions of the pleader which show the existence of a cause of action."

In the memorandum accompanying the foregoing motion, Arizona argues three points:

1. The Arizona statutes have certain conditions precedent to be complied with before Arizona can be sued by anybody. One of the principal conditions is the filing of a claim with the proper state official.

2. Arizona law never permits suit against Arizona for the negligence of Arizona, its officers or servants.

3. The naming of certain officials of Arizona as third party defendants was without warrant in law.

■ Grounds 1 and 2 of the memorandum summarized above are arguments that the complaint failed to state a claim upon which relief may be granted. The United States did not reply to the memorandum in writing, but was represented at the oral arguments on the motion to dismiss. The oral arguments are not in the record. Counsel for the United States now says it has information that the trial court based its ruling

States v. Standard Oil Company, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067. If Erie v. Tomkins underlies the Yellow Cab case and makes the United States contribute, then Erie v. Tomkins would be applicable in the instant case to excuse Arizona or a private citizen from contributing, the Arizona law on joint liability of tort-feasors generally not permitting contribution among them.

2. Upon the state of the record, this court cannot consider any contractual indemnity right, as none was pleaded in the third party complaint filed by the United States. The third party complaint recites that on or about February 19, 1949, one deed for a portion of the Fort Huachuca reservation was accepted by Arizona and a second deed for more land of the reservation was accepted by Arizona on or about March 2, 1949. The

first deed required the use of the tract conveyed for the future conservation of wild life. The second deed, conveying additional land, required the use of the land for the training of civilian components of the armed forces of the United States.

For the first time, on February 23, 1954, some three years after its third party complaint was filed and sixteen months after the trial court entered its order of dismissal, the United States reports in a footnote in its reply brief herein that there is a correction deed in existence (date unstated and acceptance of delivery not revealed) and that by the terms of the correction deed the state of Arizona is bound to save the United States harmless for injuries occurring on the premises. Assuming this to be true, this court cannot now consider this purported deed on this appeal.

to dismiss on jurisdictional grounds. Equally well informed, counsel for Arizona says Arizona knows the trial court did not base its ruling on jurisdictional grounds. Such "information," not a part of the record, should have no place in the briefs of either party.

■ But the United States argues that the wording of the minute entry order of dismissal of October 6, 1952, shows conclusively that the district court based the decision on the ground of a lack of jurisdiction because the dismissal was without prejudice; otherwise, it says, the court would have dismissed the action with prejudice. Moreover, some doubt is expressed by the parties as to the meaning of the order. We take it that when the district court says "* * and it is further ordered that this case be and it is *dismissed without prejudice as to the third party defendants*" (emphasis supplied), the plain intendment is "*dismissed without prejudice to the third party plaintiff as against the third party defendants.*" In the vernacular, the court must have meant, "The United States can sue Arizona again if it wants to do it." The United States relies on Rule 41(b), Federal Rules of Civil Procedure, 28 U.S.C.A., which reads as follows:

"* * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."

The United States says the district court, having dismissed without prejudice, must be deemed to have put the dismissal on jurisdictional grounds, that if the ground of dismissal had been failure to state a claim, the order to dismiss would have read "with prejudice." But it is equally inferable that the court did intend to dismiss on the ground no claim was stated, but was more generous in the form of the order of dismissal than it should have been.[3] If it gave the United States the privilege of filing again, perhaps the state of Arizona could complain. This we do not decide. (Arizona has not appealed.) But the United States cannot complain that it perhaps was given the right to try again.

■ From an examination of the record, this court cannot be sure whether the district court dismissed on the ground it lacked jurisdiction over the subject matter, lacked jurisdiction over the state of Arizona or dismissed because it believed no claim was stated by the United States against Arizona.[4] We hold that if a dismissal was proper on any ground, jurisdictional or failure to state a claim, the judgment should be affirmed here, irrespective of the non-assignment of grounds by the court or its assignment of the wrong ground. See Town of South Tucson v. Tucson Gas, Electric Light & Power Co., 9 Cir., 149 F.2d 847; Le Tulle v. Scofield, 308 U.S. 415, 60 S.Ct. 318, 84 L.Ed. 355. However, as shown above, Arizona did move to dismiss generally on the ground of failure to state a claim.

The United States, in effect, argues that a necessary corollary of the Federal Tort Claims Act is that states too have been stripped of their immunity from suit without consent insofar as

---

**3.** As we read the statement of points on appeal filed by appellant United States, it does not take exception to the dismissal as to officials of the state of Arizona; only to the dismissal as to the state of Arizona. In view of the decision herein holding that, in such a case as this, there is no right over of one of tort-feasor against another in Arizona, one does not reach the question of proper third party defendants, even if that question were definitely before this court.

**4.** It is quite possible that the district court did make the decision on the jurisdictional ground that here is a case where the federal government cannot invade the sovereignty of a state. As pointed out later in this opinion, this court chooses not to pass on that question. It has constitutional aspects of the kind that this court should not run out to meet unless meeting them is necessary to a decision.

claims for indemnity or contribution to the United States are concerned. In the necessary exercise of powers granted to the federal government a state's non-willingness to be sued and a state's own prerequisite conditions to suit fall rather quickly. Here, however, the federal government, by the terms of the Federal Tort Claims Act, agreed to be a defendant in tort cases upon the same basis of liability as a private person, 28 U.S.C.A. § 1346(b). Perhaps the Congress did not intend to say, "Arizona and Pennsylvania, we are taking your immunity away from you, too." It may be that the Congress did not intend to go further than to give the United States a right over against Arizona if private citizens have such a right.

■ If the theory is accepted that it must be a necessary corollary of the Federal Tort Claims Act that Congress intended to strip states of their immunities on suits by the United States for indemnity or contribution on torts where there is joint responsibility of a state and the United States, then we come to a serious constitutional question. Of course, under the Railway Safety Appliance Act, 45 U.S.C.A. § 1 et seq. and other acts which have their roots in the paramount provisions of the United States Constitution, e. g., the foreign and interstate commerce clause, art. 1, § 8, cl. 3, the state must give way to the federal government, and if the state does not voluntarily consent, it is none the less subject to suit in United States courts. Just because the members of the Congress, probably wisely, have said bills for the relief of citizens take too much of their time and therefore they adopt the Federal Tort Claims Act and turn these matters over to the federal courts, is it necessary to the exercise of any paramount federal right to hold the states are likewise stripped of their immunity from suit—if they have not chosen to waive it?

Before ruling either way on this state immunity question, the court would desire further briefing by the parties and perhaps reargument. In view of the disposition herein made, it does not invite either.

■ We would think, under the Federal Tort Claims Act, the United States may assert a right to recoupment against a state, if it has a right, in a United States district court. The United States Constitution, Article III, Section 2, does give the Supreme Court original jurisdiction in cases where a state is a party, but the Congress may also grant jurisdiction to inferior courts where the state and the United States are parties, United States v. California, 297 U.S. 175, 56 S.Ct. 241, 80 L.Ed. 567. If the right over exists, this court is of the opinion that it is implied that the right against anyone, individual or state, is to be settled in a district court under the jurisdiction granted by 28 U.S.C.A. § 1346(b).

After judgment on the Krause complaint, Arizona did not amend its answer to plead res judicata, although it suggests the proposition in its brief. The second and third defenses of the United States in answer to the complaint of Krause are substantially the same as the issues tendered by the United States in its third party complaint against Arizona. Upon these issues, on the trial of Krause's claim, the trial court found against the United States. If Arizona basic law permitted contribution among negligent tort-feasors under facts such as we have here, possible queries might be: Haven't the issues already been decided, hasn't the trial court found that Arizona was not negligent, and can the United States, having lost the issues once, relitigate them?

However, the court believes the implications of the Yellow Cab case, supra, are clear that the lower court would have been justified in dismissing the third party complaint for indemnification or contribution on the ground that the law of Arizona does not permit contribution among tort-feasors under the

set of facts we have surrounding the bazooka shell which caused the injury to Roderick Krause.

The judgment is affirmed.