**C. O. DEMPSEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant (Don Dempsey, Third-Party Defendant).**

**Civ. A. No. 1478.**

United States District Court
W. D. Arkansas,
Fort Smith Division.
Aug. 31, 1959.

78

J. H. Evans, Booneville, Ark., for plaintiff.

Chas. W. Atkinson, U. S. Atty., Robert E. Johnson, Fort Smith, Ark., for defendant.

O. D. Pendergrass, Mountain Home, Ark., for third-party defendant.

JOHN E. MILLER, Chief Judge.

This is a suit for damages arising out of a collision between a motor vehicle belonging to the United States and a motor vehicle belonging to and operated by Don Dempsey. The plaintiff, C. O. Dempsey, was a passenger in the car driven by his son, Don Dempsey. The proceedings are brought against the United States of America pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2674.

The plaintiff contends that Howard K. Farison, the Government employee driving the Government car, was negligent in failing to yield the right of way to the car in which the plaintiff was a passenger and in failing to keep a proper lookout and exercise proper control.

The Government admits that Farison was an employee of the United States and was acting within the scope of his employment and in the line of duty at the time the collision occurred. The Government denies any negligence on the part of Farison, and alleges that the plaintiff was guilty of contributory negligence in failing to adequately warn the driver of the car in which he was a passenger of the approach of the Government vehicle and of the impending danger.

It is further contended on behalf of the Government that the plaintiff and his son, Don Dempsey, were engaged in a joint enterprise, and that the son was guilty of negligence in failing to keep a proper lookout and control, in failing to yield the right of way, in failing to signal before making a left turn, and that the negligence of the son is imputed to the plaintiff.

The Government also filed a third-party complaint against Don Dempsey alleging the same acts of negligence as set out above.

The case was tried to the court on August 19, 1959, and at the conclusion of the testimony was submitted. The court has considered the pleadings, the testimony and the exhibits, and now makes and files herein its findings of fact and conclusions of law, separately stated.

Findings of Fact

1.

The plaintiff is an 81 year old resident of the City of Booneville in the Western District of Arkansas. On May 27, 1958, the plaintiff and his wife traveled from their home in Booneville to Mountain Home, Arkansas, in an automobile owned and operated by a son, Glenn Dempsey. The purpose of the trip was to visit another son, the third-party defendant, Don Dempsey, who then resided in Mountain Home.

Several hours after arriving in Mountain Home, the plaintiff and his son Don embarked on a fishing trip to Lake Norfork, located some 14 miles away. The trip was made in an automobile owned and operated by Don Dempsey and under his exclusive direction and control. They traveled southeast from Mountain Home on State Highway No. 5 until they reached the town of Ellis, sometimes called Salesville, where they turned onto State Highway 177 and traveled northeast from Ellis. Their destination was a public boat dock on Lake Norfork where Don Dempsey kept a boat.

The road from Ellis to the Norfork Dam area, a portion of which is designated Arkansas State Highway 177, was originally constructed by the United States Government during the construction of the dam as an access road. Upon completion of the dam the portion of the road, measuring .99 of a mile, between Ellis and the federal reservation, was turned over to the State of Arkansas and subsequently designated State Highway 177. The State of Arkansas maintains the highway from Ellis to the boundary of the federal reservation, and the United States Government maintains the continuation of the highway from there to the area of the dam, the boat dock, and other recreational facilities. This highway is the chief access road to the dam and to the recreational areas on that part of the lake. It is heavily traveled by tourists and sportsmen. The only indication of the boundary line of the federal reservation is a cattle guard across the road. The road is of asphalt construction.

## 2.

Howard K. Farison is now and was at all times material herein employed by the Corps of Engineers of the United States Army as an engineer on the Bull Shoals and Norfork Dams projects. On the afternoon of May 27, 1958, he was engaged in his official duties at the powerhouse adjacent to the dam. Shortly after 5 o'clock he left the powerhouse and was returning to his office in Mountain Home. He was proceeding along a Government-owned road, commonly referred to as the Powerhouse Road. This road is of asphalt construction and is approximately 700 feet long. It runs from the powerhouse to the continuation of State Highway 177 referred to above. It is used primarily by the Government employees working at the powerhouse and also by occasional visitors to the powerhouse.

Farison had traveled this route three or four times a week for several years preceding the accident, and was familiar with the traffic conditions on the Powerhouse Road and on the continuation of Highway 177. Don Dempsey was the owner of a boat housed at the boat dock at the terminus of the continuation of Highway 177 and had frequently traveled the route for a period of two years prior to the accident.

## 3.

When the plaintiff and his son crossed the cattle guard on State Highway 177 and entered the Government reservation, the Dempsey car was traveling in an easterly direction between 40 and 45 miles per hour. As they neared the intersection with the Powerhouse Road, where the road gradually turns in a northeasterly direction, the plaintiff observed the Government car operated by Farison traveling in a westerly direction along the Powerhouse Road about 100 yards from the intersection. Don Dempsey also observed the Government car when it was 200 feet from the intersection, and slowed his speed to 30 to 35 miles per hour.

Farison observed the Dempsey car traveling along the continuation of State Highway 177 when he was 100 feet from the intersection, and he slackened the speed of his car. Neither driver made any signal. As both cars neared the intersection, Farison thought that the Dempsey car was going to proceed straight ahead and enter the Powerhouse Road rather than follow the continuation of State Highway 177 which veers to the left or to the northeast. Young Dempsey thought that Farison was going to stop. Both were mistaken. The Dempsey vehicle was already into the intersection fol-

lowing the continuation of State Highway 177 to the left when Farison entered. Just before the collision the plaintiff told his son: "Look out. He is going to hit us." Don Dempsey swerved to the left just prior to the impact. Farison continued his regular course.

The time of the collision was 5:20 p. m. on May 27, 1958. The weather was clear and warm, and the asphalt surface of the road was dry.

The intersection of the continuation of Highway 177 and the Powerhouse Road is somewhat difficult to picture. It might be best described as a distorted "Y" type intersection. The continuation of Highway 177 runs in an almost east and west direction prior to the intersection, but just west of the intersection it veers to the left in a northeasterly direction. The Powerhouse Road at this point runs in an east and west direction in such a manner as to appear to be an extension of Highway 177 going east. There were no traffic control devices at the intersection. Both the continuation of Highway 177 and the Powerhouse Road are 20 feet in width and have an asphalt surface. Neither has a marked center line. The intersection is located within the federal reservation and is maintained by the United States Government. The intersection is approximately 30 feet wide, and there were no obstructions to interfere with the vision of the drivers.

### 4.

The continuation of Highway 177 is a heavily traveled route. It is the only major access road to the dam area and the adjacent boat docks and recreational facilities. By comparison, the Powerhouse Road is only 700 feet long and is used primarily by the employees at the powerhouse. Just prior to the intersection with the Powerhouse Road the continuation of Highway 177 begins a gradual turn to the left. The drivers of both cars were familiar with these conditions.

### 5.

When the collision was imminent, Don Dempsey made a sharp left-hand turn in an attempt to avoid the Government car. Farison applied his brakes but did not alter his course even though there was ample room within the paved intersection for him to turn to the left. The Government vehicle struck the Dempsey car a glancing blow about midway on the right side. The point of impact was in the northeast portion of the intersection and in the left-hand lane of the continuation of Highway 177. Had Farison driven his automobile to the left, the collision would not have occurred.

### 6.

The plaintiff, C. O. Dempsey, has incurred medical expenses in the amount of $267.47 as a result of injuries sustained in the collision. At the time of the accident the plaintiff was suffering from degenerative arthritis, and as a result of the collision suffered a "spraining" type injury to his neck which resulted in a substantial amount of pain. As a result of his injuries, it was necessary for the plaintiff to be placed in traction at various times following the accident. The plaintiff has now substantially recovered from the injury and suffers no undue restriction of motion other than that usually accompanying an arthritic condition. Mr. Dempsey is retired and did not suffer any loss of earnings.

### Discussion

The issues in this case are very clear, and the facts are not in serious dispute. The questions to be determined are: (1) was Howard K. Farison negligent in the operation of the Government vehicle and, if so, was such negligence a proximate cause of the plaintiff's injuries; (2) were the plaintiff, C. O. Dempsey, and his son, Don Dempsey, engaged in a common enterprise at the time of the collision; (3) was the plaintiff guilty of contributory negligence in his conduct as a passenger in the automobile driven by his son; (4) the extent of damages suffered by the plaintiff as a result of the collision; and (5) the liability of Don Dempsey, the third-party defendant, on the third-party complaint filed by the United States.

■ This automobile accident occurred on a federal reservation. However, the general rules of the road are applicable. The drivers of the cars, Don Dempsey and Howard K. Farison, each had a duty to keep a lookout for other vehicles upon the highway and to keep his own vehicle under reasonable control. Gibson v. United States, D.C.W.D.Ark. 1958, 163 F.Supp. 385; Kisor v. Tulsa Rendering Co., D.C.W.D.Ark.1953, 113 F. Supp. 10. Most important and basic, however, each driver had a duty to exercise ordinary care for his own safety and for the safety of others traveling upon the highway. Gibson v. United States, supra.

Ordinary care is such care as would be exercised by an ordinary prudent person under the same or similar circumstances.

■■ Since the collision occurred on a federal reservation, the specific Arkansas traffic statutes applicable to the right of way at the intersection of a public highway and a private road would not apply. In the absence of any specific statutory provision the general rule concerning the right of way at any intersection is stated in 5A Am.Jur., Automobiles and Highway Traffic, Sec. 296:

"In the absence of a statute or ordinance regulating the matter, it is a general rule that the vehicle first entering an intersection of streets is entitled to the right of way, and it is the duty of the driver of another vehicle approaching the crossing to proceed with sufficient care to permit the exercise of such right without danger of collision."

When the conduct of Farison is measured by the above standards, it becomes quite evident that he did not exercise ordinary care as that term has been defined. Farison was thoroughly familiar with the intersection. In his testimony he stated that he realized that the majority of traffic remained on the continuation of Highway 177. Farison further testified that upon observing the Dempsey car, he reduced the speed of his vehicle and that based on his observation of the Dempsey car he thought that it was going to enter the Powerhouse Road, and that acting upon this thought, he proceeded into the intersection. There can be no doubt but that the Dempsey car was already in the intersection at that time. The fact that Farison felt he was able to determine, even though incorrectly, the future route of the Dempsey car attests to this. Also, the point of impact indicates that the Dempsey car was two-thirds of the way through the intersection when it was struck a glancing blow in the middle of its right side by the right front corner of the Government vehicle.

Even after it became obvious to Farison that the Dempsey vehicle was going to follow the continuation of Highway 177, he could have avoided the collision by turning to the left. The intersection afforded him ample room for this type maneuver, and the physical evidence indicates that if there had been a slight turn to the left on his part, the collision would have been avoided.

■ Under Arkansas law negligence is the doing of that which an ordinary prudent person would not do under the circumstances, or the failure to do that which an ordinary prudent person would do under the circumstances. Kisor v. Tulsa Rendering Co., supra.

■ Negligence is the proximate cause of damages sustained by the plaintiff only if the damages were the natural and probable consequence of the defendant's negligent act or acts and ought to have been foreseen by the defendant in the light of attending circumstances. Johnson v. Stewart, D.C.W.D.Ark.1958, 163 F.Supp. 764; Kisor v. Tulsa Rendering Co., supra.

■ It is therefore apparent that Farison was negligent in the operation of the Government vehicle in failing to exercise ordinary care under the existing circumstances, and that this failure amounted to negligence on his part, and that such negligence was the proximate cause of the collision.

■ The Government contends that the plaintiff, C. O. Dempsey, and the third-party defendant, Don Dempsey, were engaged in a joint enterprise at the time of the accident. The Court of Appeals for this Circuit correctly set forth the Arkansas rule regarding a joint enterprise in Capital Transportation Co. v. Compton, 8 Cir., 1951, 187 F.2d 844, at page 848:

> " 'In order for a joint enterprise to arise two fundamental and primary requisites must concurrently exist, to-wit: A community of interest in the object and purpose of the undertaking in which the automobile is being driven, and an equal right to direct and govern the movements and conduct of each other in respect thereto. If either or both of these elements is absent, there is no joint enterprise.' "

In Rogers v. Crawford, 1952, 220 Ark. 385, 247 S.W.2d 1005, the Arkansas Supreme Court held that the mere fact a husband and wife were traveling together in a car owned by the husband on a fishing trip did not alone constitute a joint enterprise within legal contemplation.

■ The facts in the instant case indicate there may have been a community of interest, but it cannot seriously be contended that the plaintiff had an equal right to direct and govern the movements and conduct of his son. Therefore, the negligence, if any, of Don Dempsey cannot be imputed to his father, C. O. Dempsey.

The Government further contends that the plaintiff was guilty of contributory negligence in failing to warn the driver of the car in which he was a passenger of approaching danger.

■ Contributory negligence is the doing of something by the plaintiff which a person of ordinary care and prudence would not have done under the same or similar circumstances, or the failure of the plaintiff to do something which a person. of ordinary care and prudence would have done under the same or similar circumstances, and which conduct on the part of the plaintiff contributed, however slightly, in whole or in part, to the occurrence and damages and without which the damages would not have been sustained. Johnson v. Stewart, supra; Kisor v. Tulsa Rendering Co., supra.

■ The duty of a passenger in an automobile was well stated by the Arkansas Supreme Court in the recent case of Elmore v. Dillard, 1957, 227 Ark. 260, at page 265, 298 S.W.2d 338, at page 342:

> " 'While an occupant of a vehicle is not required to exercise the same watchfulness as the driver, it is his duty to exercise ordinary care, including a reasonable use of his faculties of sight, hearing, and intelligence, to observe and appreciate danger or threatened danger of injury, and, if he fails to do so, and such failure contributes to the injury complained of as a proximate cause, he is guilty of contributory negligence.' "

The particular duty of a passenger to watch and observe danger at intersections is stated in 5A Am.Jur., Sec. 796:

> "Ordinarily no duty is imposed upon a guest to keep a lookout for impending danger at street intersections, and he will not be viewed as contributorily negligent where an accident results at an intersection merely because he failed to keep any watch or observe the condition of traffic in the vicinity.

> "While under some circumstances, of course, a guest in an automobile may be guilty of contributory negligence in a collision with another car at a street intersection independently of the driver, the authority over and the responsibility for the management of the car rests on the driver, and the law does not hold a passenger equally bound with the driver to watch for the approach of other traffic, for this would require such constant interference with the driver as to increase, rather than diminish, the danger."

The facts in this case indicate that both the passenger and the driver of the Dempsey car observed the approach of the Government vehicle from the Powerhouse Road. When a collision was imminent, the plaintiff told his son: "Look out. He is going to hit us." Applying the standard of care owed by a passenger to these facts, it is obvious that the plaintiff was not guilty of any act of negligence and that he was exercising ordinary care under the circumstances.

The measure of damages for the plaintiff's personal injuries is such a sum as will reasonably compensate him for the pain, suffering, and mental anguish he has incurred and will incur in the future, and medical expenses he has incurred. Gibson v. United States, supra; Kisor v. Tulsa Rendering Co., supra. A consideration of all the evidence convinces the court that the total amount of damages sustained by C. O. Dempsey by reason of his personal injuries is $1,000.

The court now comes to the question of the liability of the third-party defendant, Don Dempsey, on the third-party complaint filed by the Government. The Government has alleged that Don Dempsey was negligent in the operation of his car and that such negligence was a proximate cause of the collision.

The United States may be either a third-party plaintiff or a third-party defendant when its liability arises under the Federal Tort Claims Act. United States v. Yellow Cab Co., 1951, 340 U.S. 543, 71 S.Ct. 399, 97 L.Ed. 523. When the United States is a defendant in a tort claims case, it may bring in as a third-party defendant one who is or may be liable to it for all or part of the plaintiff's claim against the Government. See 3 Moore's Federal Practice, Sec. 14.29, 2d Ed. 1955.

In this case the United States bases its claim against the third-party defendant on the theory of contribution among joint tortfeasors. Where the applicable state law permits contribution among joint tortfeasors regardless of whether the plaintiff has sued them all in the first instance, it is generally held that the defendant can bring in other joint tortfeasors as third-party defendants in order to enforce his claim for contribution. See 3 Moore's Federal Practice, Sec. 14.11, 2d Ed. 1955. The State of Arkansas adopted the Uniform Contribution Among Tortfeasors Act in 1941, Ark. Stat.Ann. 34–1001 et seq., (1947), which provides for such contribution.

An additional problem is raised in this case, however, since the United States is involved under the Tort Claims Act. The doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, would not directly apply since the United States is a party and its purse is affected. If the right to contribution is dependent upon reference to state law, divergent rules will apply since in some states there is no right of contribution and in others it is a limited right. It would therefore be in the interest of uniformity for Congress to act in this matter. In the absence of Congressional action, however, the courts have uniformly applied the state law as to contribution rather than revert to the common-law rule of no contribution. United States v. State of Arizona, 9 Cir., 1954, 214 F.2d 389; Showers v. United States, D.C.M.D. Pa.1953, 113 F.Supp. 350; Russell v. United States, D.C.M.D.Pa.1953, 113 F. Supp. 353. Therefore, the Government has a right of contribution against Don Dempsey if it has proved by a preponderance of the evidence that he was a joint tortfeasor.

The evidence shows that Don Dempsey was operating his vehicle at a reasonable speed, that he observed the Government vehicle when it was still 200 feet from the intersection and that he slackened his speed. The Dempsey car was proceeding along a heavily traveled thoroughfare and the Government vehicle was traveling along a sparsely traveled route. Dempsey entered the intersection first, and when he observed the Government car entering the intersection, he cut sharply to

his left. The Dempsey car was two-thirds of the way through the intersection when the impact occurred.

When the rules of the road and the standards of ordinary care set forth above are applied to these facts, it cannot be said that Don Dempsey drove his automobile in a negligent manner. On the other hand, the negligence of Farison, the Government employee, was the sole proximate cause of the collision. Therefore, Don Dempsey, the third-party defendant, is not liable to the Government for contribution.

### Conclusions of Law

1.

The court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C.A. §§ 1346, 2674.

2.

Howard K. Farison was an employee of the United States and was acting within the scope of his employment at the time of the collision.

3.

Howard K. Farison was guilty of negligence in the operation of the Government vehicle, and his negligence was the sole proximate cause of the collision and the damages incurred by the plaintiff.

4.

The United States is liable for the damages received by the plaintiff as a proximate result of the negligence of its employee, Howard K. Farison.

5.

The plaintiff, C. O. Dempsey, and his son, Don Dempsey, the third-party defendant, were not engaged in a common enterprise.

6.

The plaintiff was not guilty of contributory negligence.

7.

The plaintiff is entitled to recover of and from the United States the sum of $1,000 for his damages.

8.

The third-party defendant, Don Dempsey, was not guilty of negligence and is not liable to the United States on the third-party complaint.

Judgment in accordance with the above is being entered on this date.