421 F.2d 365
 Mrs. Edith OLIVER, Administratrix of the Estate of Lucheon
Oliver, Deceased, and Arkansas State Highway
Commission, Appellees,
v.
HALLETT CONSTRUCTION COMPANY, a Corporation, Appellant.
 No. 19591.
 United States Court of Appeals Eighth Circuit.
 Jan. 28, 1970.
 
 Isaac A. Scott, Jr., of Wright, Lindsey & Jennings, Little Rock, Ark., for appellant; Alston Jennings, Little Rock, Ark., on brief.
 Harold Sharpe, Forrest City, Ark., for appellee Mrs. Edith Oliver on brief.
 Before VOGEL, BLACKMUN and BRIGHT, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 Mrs. Edith Oliver, plaintiff-appellee, brought this action as administratrix of the estate of Lucheon Oliver, deceased, in which she sought damages by reason of the wrongful death of her husband against Hallett Construction Company, a corporation, defendant-appellant. The case was tried to a jury, which returned verdicts as follows: Mrs. Edith Oliver, administratrix of the estate of Lucheon Oliver, $3,000; Mrs. Edith Oliver individually, $5,000; Samuel Oliver (son of deceased), $28,760; Judy Lynn Oliver (daughter of the deceased), $28,760.
 
 
 2
 This case was originally commenced in the Circuit Court of St. Francis County, Arkansas. Diversity of citizenship and the requisite amount being involved, the case was removed to federal court. No jurisdictional issues are involved. The law of the State of Arkansas controls.
 
 
 3
 Lucheon Oliver, the deceased, died as the result of an accident occurring on October 7, 1966, late in the afternoon, apparently between 5:30 and 6:00 o'clock P.M. The deceased was a fence inspector employed by the Arkansas Highway Department. He was driving a pickup truck owned by the Highway Department and apparently was engaged in the business of his employer at the time.[1]
 
 
 4
 The appellant had a contract with the Arkansas Highway Department to construct a portion of what is now Interstate Highway No. 40. The south roadway, which was to carry double lanes of eastbound traffic, was approximately 50 feet wide and at the time spread with gravel. Plans provided for a concrete slab of 24 feet in width to be constructed thereon. At this stage of completion workmen engaged in the construction of the highway and others, such as the deceased, were permitted to drive vehicles on the graveled portion of the highway. The highway itself was not open to travel by the public. The deceased's job as a fence inspector was to drive along the highways under construction or repair and check to see that the fences alongside and on access roads were properly maintained. In other words, the deceased had a right to be where he was, using the highway even though it was still under construction and the public excluded therefrom.
 
 
 5
 For some substantial period of time, estimated at from two weeks to a month or longer, the appellant had maintained a stockpile of gravel in the center of the highway under construction. This stockpile was being added to and hauled from continuously. To it was hauled sufficient gravel to cover that part of the highway upon which Hallett was engaged. The size of this stockpile varied. At its largest, it contained approximately 2,000 or more cubic yards and was approximately fifteen feet wide by a hundred feet long and eight or ten feet high. The stockpile as established by the appellant was approximately in the center of the highway, leaving ample room on either side to permit dump trucks to be loaded from the stockpile and the gravel to be hauled away for spreading. Other vehicles, whose drivers had business there, were allowed to use or traverse the graveled highway on either side of the stockpile. According to Hallett's records, on the day of the accident the stockpile had been substantially reduced by the hauling therefrom of 288 cubic yards of gravel, which had been taken away and spread. It was estimated by witnesses that by the end of the work day October 7, 1966, the stockpile was approximately four feet high, ten feet long and four feet wide and to have contained from approximately five or six cubic yards, according to one witness, and ten to fifteen cubic yards of gravel, according to another.
 
 
 6
 There were no eyewitnesses to the accident. By deduction, however, we know that the deceased was driving a Highway Department pickup truck which he used in his work, in an easterly direction and apparently was engaged in the course of his employment of inspecting the fences which paralleled the highway and blocked out access roads. While so doing he ran into the stockpile located in the center of the highway, receiving injuries which resulted in his death.
 
 
 7
 It is not known exactly what time the accident took place, but from the witnesses who arrived after it happened it must have taken place somewhere between 5:30 and 6:00 o'clock P.M. In that connection we take judicial notice of the fact that on October 7, 1966, at Little Rock, Arkansas, sundown was at 5:45 P.M. Central Standard Time and that the Arkansas statute governing the use of lights on vehicles provided in pertinent part, Ark.Stat.1947 Ann., 75-702:
 
 
 8
 'When lighted lamps are required.-- (a) Every vehicle upon a highway within this State at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles as hereinafter stated.'
 
 
 9
 Paul Klink, the first witness to arrive at the scene of the accident, found the deceased outside to the left of his truck and lying on the ground. The front end of the deceased's truck was damaged, one tire was flat and one light was still on and the blinker lights were on. It was established by other witnesses that after striking the gravel stockpile, the deceased's pickup had traveled on in an easterly direction for a distance estimated variously at 60, 80 and 100 feet.
 
 
 10
 From the judgments following the verdicts of the jury, Hallett has appealed. The contractor's main contention is that there was an utter failure to establish negligence on the part of the appellant which could have been a proximate cause of the accident, but if that be wrong, that the deceased was nevertheless guilty of contributory negligence and that such contributory negligence of the deceased was equal to or greater than that of Hallett and accordingly barred recovery as a matter of law. Additional grounds are raised by the appellant but inasmuch as we think a resolution of the contributory negligence issue is dispositive of the case, we find it unnecessary to discuss them.
 
 
 11
 In an attempt to establish negligence on the part of the appellant, there is stressed the fact that the pile of gravel into which Oliver ran was much diminished in size on the day of the accident, was of the same color as the road and therefore might be difficult to see or discern, particularly near the end of the daylight hours. It is pointed out that there were no flares, barricades or other warning signs set out at the ends of the gravel stockpile to warn travelers of its presence and it is contended that failure to take these precautions amounted to an omission of due care and additionally created a trap for the decedent which was a proximate cause of the accident and of his death. It is also pointed out that an endloader used in connection with the stockpile of gravel had been removed from the scene the afternoon of the accident.
 
 
 12
 The uncontradicted testimony established: (1) That the gravel stockpile itself was self-evident; (2) that the presence of the stockpile was a necessary and proper incident of highway construction; (3) that the stockpile was located at an obvious place and that room had been left on either side of it for those who worked there or had a right to be there on business; (4) that the appellant was not obligated to store its gravel in any different fashion; (5) that the highway was still under construction, and was not and never had been opened to the public; (6) that the deceased had been employed by the Arkansas Highway Department for some substantial period of time; (7) that the deceased was thoroughly familiar with the existence and presence of the gravel stockpile in the center of the highway being constructed; (8) that the deceased had passed the stockpile on many occasions prior to the time of the accident and that on the day of the accident was seen to have traveled that portion of the highway several times; (9) that the witness Fred Turner saw the deceased several times the day of the accident, the last occasion being 'around six o'clock'; (10) that at such time the deceased was seen traveling in an easterly direction toward the gravel stockpile, that he was driving in the right lane of the highway being constructed and that according to Turner he was traveling at a rate of speed of 'at the least' 60 miles per hour, and was watching the fences on the south, which would be to the deceased's right.
 
 
 13
 As an appellate court, it is our duty to take that view of the evidence which tends to support the jury's verdicts and we must accept as established all reasonable inferences arising from the testimony and which tend to sustain such verdicts.
 
 
 14
 This suit is based upon the alleged negligence of the defendant-appellant. The burden of establishing negligence is, of course, on the part of the plaintiff-appellee. As in most jurisdictions,
 
 
 15
 'negligence, under Arkansas law, is the failure to do that which a person of ordinary care and prudence would do under the same or similar circumstances, or the doing of which a person of ordinary care and prudence would not do under the same or similar circumstances. St. Louis-San Francisco Ry. Co. v. Ward, 197 Ark. 520, 524, 124 S.W.2d 975; Self v. Kirkpatrick, 194 Ark. 1014, 1022, 110 S.W.2d 13.' Kisor v. Tulsa Rendering Co., D.C.W.D.Ark., 1953, 113 F.Supp. 10, 16.
 
 
 16
 See, also, Dempsey v. United States, D.C.W.D.Ark., 1959, 176 F.Supp. 75, 81; Ben M. Hogan & Co. v. Fletcher, Ark., 1963, 370 S.W.2d 801.
 
 
 17
 In Dempsey v. United States, supra, Judge Miller defined contributory negligence under the law of Arkansas as follows, 176 F.Supp. at 82:
 
 
 18
 'Contributory negligence is the doing of something by the plaintiff which a person of ordinary care and prudence would not have done under the same or similar circumstances, or the failure of the plaintiff to do something which a person of ordinary care and prudence would have done under the same or similar circumstances, and which conduct on the part of the plaintiff contributed, however slightly, in whole or in part, to the occurrence and damages and without which the damages would not have been sustained. Johnson v. Stewart, supra (D.C.W.D.Ark.1958, 163 F.Supp. 764); Kisor v. Tulsa Rendering Co., supra.'
 
 
 19
 Under the law of Arkansas, however, a person who is guilty of contributory negligence which is a proximate cause of an accident may nevertheless recover if his negligence is of lesser degree than the negligence of the other person causing the damage. Ark.Stat.1947 Ann., 27-1730.1:
 
 
 20
 'Contributory negligence not a bar to recovery where less than negligence of person causing damage.-- Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage.'
 
 
 21
 In the first place, in considering the questions of negligence of the defendant and the contributory negligence of the deceased, we believe the plaintiff has failed of her burden to establish negligence on the part of Hallett Construction Company which could have been a proximate cause of the accident. Be that as it may, however, and for the moment granting the contrary, we find that the contributory negligence of the deceased was clearly equal to or greater than that of the appellant, even if the appellant could have been found guilty of negligence. We accordingly reverse.
 
 
 22
 Neither party has been able to find an Arkansas case or cases directly in point. Appellant has cited to us and relies upon a substantial number of Arkansas cases, mostly involving railroad crossing accidents where the one seeking recovery has collided with a train stopped at or moving through a highway intersection with the railroad right-of-way. These cases establish that in Arkansas, as is true in most jurisdictions, one who drives into the side of any object of whose presence he was aware or should have been aware, is guilty of contributory negligence as a matter of law.
 
 
 23
 While conceding the correctness of the Arkansas courts' rulings in connection with the foregoing cases, the appellee nevertheless makes much of and relies greatly upon Hawkins v. Missouri-Pacific R. Co., 1950, 217 Ark. 42, 228 S.W.2d 642, to support her contention that the presence of the gravel stockpile without barrier, lights or warning or the presence of the endloader and being of the same color as the rest of the highway, created a trap for the deceased. We think confidence in Hawkins v. Missouri-Pacific R. Co. to be misplaced. This court has considered Hawkins in another diversity case from Arkansas. See, Chicago, Rock Island & Pacific R. Co. v. Kinard, 8 Cir., 1962, 299 F.2d 829. In Hawkins, the defendant's freight train was standing at nighttime on the track at a point where the highway crosses. The railway tracks were raised some two or three feet above the general level of the highway. A boxcar of the train immediately in front of plaintiffs was empty and had both doors open wide. Through the space above the raised tracks and beneath the boxcar bottom plaintiff and his companion, who were strangers in the area, could see the lights of cars coming toward them from the other side of the railroad tracks and through the open doors of the boxcar could see a traffic light in the center of the street ahead of them and on the opposite side of the tracks. We will understand the Arkansas court's ruling in Hawkins in reversing a directed verdict for the railroad company and in directing a new trial. Clearly, the jury could have found that, for strangers, an optical illusion was created by the open space under the boxcar and the wide open doors of the boxcar. Through the open doors the plaintiffs could see the lights of oncoming vehicles and traffic signals, all of which would tend to trap a person unfamiliar with the area.
 
 
 24
 No such situation exists in the instant case. A 'trap' cannot be created out of something with which the injured is thoroughly familiar. Here the deceased knew about the stockpile and its presence. There was no duty on the part of the appellant to warn him of something of which he was fully aware. It is apparent that the deceased was traveling in the center of the highway, knowing that it was occupied by a gravel stockpile, that he was traveling at a high rate of speed, as indicated by the witness Turner and as indicated by the fact that his truck traveled between 60 and 100 feet after striking and plowing into the gravel stockpile. Obviously the deceased was paying no attention to the presence of an obstruction with which he was thoroughly familiar. This cannot be called a trap.
 
 
 25
 There has been cited to us as being directly in point United States v. Bowers, 5 Cir., 1953, 202 F.2d 139. Therein the plaintiff was driving in a recreation area maintained by the United States government. The trial court found as a matter of fact that plaintiff was partially blinded by sunlight at the time of the accident wherein his vehicle left the highway on a curve and injuries to him resulted. In the District Court liability had been based on the conclusion that the government was negligent in failing to erect and maintain suitable posts or warning devices along the outer edges of the road. In reversing, the Fifth Circuit stated, at page 140 of 202 F.2d:
 
 
 26
 'Liability was based on the court's finding that the Government was negligent 'in failing to erect and maintain along the outer edge of said road suitable posts or other warning devices' and that such negligence was the proximate cause of the accident and of plaintiff's injuries and damages.
 
 
 27
 'Assuming without deciding that the negligence found by the court is within the terms of the Federal Tort Claims Act, we are of the opinion that under the evidence the finding of negligence proximately causing the plaintiff's injuries was clearly erroneous. The plaintiff admitted that he had used the road dozens of times, was thoroughly familiar with it, that he knew there were no guard rails on it, and that he knew where the edge of the road was. Failure to warn the plaintiff could not have been negligence proximately causing his injuries when he was already so familiar with the road as to appreciate the peril, 2 Am. Law Institute, Restatement of Torts, 340; 38 Am. Jur., Negligence, 91.'
 
 
 28
 The foregoing statement from the Fifth Circuit in United States v. Bowers was quoted with approval and followed by the Supreme Court of Arkansas in the recent case of Allen v. Lake Catherine Footwear Corporation, 1969, 437 S.W.2d 803, 806. There would seem to be firmly entrenched in the law of Arkansas the principle that there is no duty to warn of something that is obvious or of which the deceased or injured is fully aware.
 
 
 29
 An apt statement of the principle with which we are concerned also comes from the Springfield Court of Appeals, Trantham v. Gillioz, Mo., 1961, 348 S.W.2d 737, 741-742, as follows:
 
 
 30
 'Ordinarily a traveler rightfully upon a public highway may, in the absence of any notice to the contrary, assume or presume that the way ahead is clear and that it may be safely traveled at a reasonable speed. But this rule does not apply if the traveler knows, or should know, that the road is under construction, especially if it is closed to public travel. The rule then is the reverse. Under such conditions the traveler must use and exercise his faculties to see and discover and to so manage his automobile that he may, by the exercise of care commensurate with the circumstances, avoid any dangers and difficulties which he might encounter in passing over or along such highway. He must proceed with caution. And the duty to use such care extends not only to the avoidance of particular dangers which are known or apparent but also to the anticipation and discovery of such obstructions as might be discovered by the exercise of due care.'
 
 
 31
 See, also, Hill v. Kan. State Highway Comm., 1936, 143 Kan. 129, 53 P.2d 882; Robinson v. Bybee, Ky., 1957, 299 S.W.2d 791; Comeau v. Brown-Wales Co., 1965, 348 Mass. 800, 206 N.E.2d 90; Zieff v. Cutter Firebrick Co., 1965, 350 Mass. 761, 212 N.E.2d 856; Lyon v. Paulsen Bldg. & Supply, Inc., 1968, 183 Neb. 365, 160 N.W.2d 191.
 
 
 32
 We believe that here there was no duty to warn the deceased as to a condition of which he was fully aware and that the deceased was guilty of contributory negligence as a matter of law which was equal to or greater than any possible negligence of the appellant. Appellant's motion based thereon should have been granted.
 
 
 33
 This case is remanded with instructions to dismiss.
 
 
 34
 BRIGHT, Circuit Judge (dissenting).
 
 
 35
 In applying the rule that we give the party having the verdict the benefit of every favorable inference reasonably justified by the evidence, I arrive at conclusions contrary to those of the majority. See Meitz v. Garrison, 413 F.2d 895, 896 (8th Cir. 1969). The defendant highway contractor pleaded that decedent Lucheon Oliver drove at an excessive rate of speed or failed to keep a proper lookout, such conduct constituting contributory negligence. Defendant construction company bore the burden of proving that affirmative defense. Kisor v. Tulsa Rendering Co., 113 F.Supp. 10 (W.D.Ark.1953); Snow v. Riggs, 172 Ark. 835, 290 S.W. 591 (1927); see Ark. Stats.Ann. 28-101 (Repl. 1962). I believe the evidence in this case to be sufficient to support the verdict under the 'substantial evidence' test used by both the federal courts and the Arkansas Supreme Court. See Meitz v. Garrison, supra; St. Louis Southwestern Ry. Co. v. Farrell, 242 Ark. 757, 416 S.W.2d 334 (1967); Hawkins v. Missouri Pac. R. Co., 217 Ark. 42, 228 S.W.2d 642 (1950). Without an eye-witness, the jury relied solely on circumstantial evidence. On such evidence, it may draw any conclusion which is within 'reasonable probability'. See Twin City Plaza, Inc. v. Central Surety & Ins. Co., 409 F.2d 1195, 1202-1203 (8th Cir. 1969). The Arkansas Supreme Court recites a similar view:
 
 
 36
 '* * * A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury.' Hawkins v. Missouri Pac. R. Co., 217 Ark. at 47, 228 S.W.2d at 644, approved in St. Louis Southwestern Ry. Co. v. Farrell, 242 Ark. at 763, 416 S.W.2d at 338.
 
 
 37
 The testimony indicated that the contractor's employees normally completed their work between 6:00 and 7:00 p.m. None remained at the job site where the accident occurred. The contractor's paving superintendent Klink discovered the accident and by radio, he immediately notified his construction foreman Ruden of its occurrence. Ruden received the call at approximately 6:30 p.m., C.S.T. Klink and Ruden described the sky coloration at the time as dusk.
 
 
 38
 The evidence further discloses that during the day the contractor's employees removed 288 cubic yards of gravel from the stockpile located at the place of Oliver's accident, leaving only five or six yards in an irregular pile approximately four feet high and otherwise measuring approximately four by six feet.
 
 
 39
 The decedent's pickup truck did not overturn after striking and running over the middle of the gravel pile. Photographs of the vehicle and the accident scene taken the next morning showed only moderate damage to the decedent's pickup, not characteristic of that usually observed after a collision between a motor vehicle traveling at high speed and a stationary object. The highway at the scene of the accident consisted of gravel sub-base of the same color as the material contained in the gravel pile.
 
 
 40
 For several weeks prior to the accident, the contractor's equipment, specifically an endloader used for transferring gravel from the pile to trucks, remained in the vicinity of the stockpile overnight. The contractor had removed that equipment on the afternoon of the accident.
 
 
 41
 From the foregoing, I believe that a jury could reasonably infer, contrary to the crucial conclusions drawn by the majority, that:
 
 
 42
 (1) The gravel pile itself was not self-evident. In the dusk, this mound blended with the sub-base and became indistinguishable from the highway surface.
 
 
 43
 (2) Oliver could not be charged with knowledge of any obstruction at the place of the accident. Witnesses saw Oliver in the stockpile area at Noon and at 4:00 p.m., prior to the accident. Oliver obviously observed the contractor removing gravel from that stockpile, but driving east in the gathering darkness immediately preceding the accident, Oliver saw no endloader on the highway and the way ahead seemed clear as the remaining mound of gravel blended into the highway surface. Oliver assumed incorrectly, but reasonably, that the contractor had removed the entire gravel stockpile. Such conclusion is in accord with the following comments expressed by the trial court in denying defendant's motion for a directed verdict of dismissal:
 
 
 44
 'The few cubic yards of gravel was all that was left there and the employees said the stockpile had been left there and certainly there is a strong emphasis here that the employees knew it was being removed that day, too.'
 
 
 45
 (3) Oliver drove at a reasonable rate of speed at the time of and immediately preceding the accident. The jury may properly have disregarded witness Turner's statements that Oliver drove at sixty miles per hour while looking away from the highway toward fences south of the road as being either incredible or inapplicable to Oliver's speed or to his lookout at the time and place of the accident. No fences occupied any area immediately adjacent to the highway at the place of the accident. The relatively minor damage sustained by Oliver's pickup truck appears to belie any claim of excessive speed.
 
 
 46
 In generally analogous fact situations, the Arkansas Supreme Court consistently permits the jury to determine whether a motorist striking a highway obstruction is contributorily negligent. See Wood v. Combs, 237 Ark. 738, 375 S.W.2d 800 (1964); Hawkins v. Missouri Pac. R. Co., 217 Ark. 42, 228 S.W.2d 642 (1950); McGeorge Contracting Co. v. Mizell, 216 Ark. 509, 226 S.W.2d 566 (1950); Hill v. Whitney, 213 Ark. 368, 210 S.W.2d 800 (1948); Coca-Cola Bottling Co. v. Shipp, 174 Ark. 130, 297 S.W. 856 (1927).
 
 
 47
 I find the factual situations in Chicago, Rock Island & Pac. R. Co. v. Kinard, 299 F.2d 829 (8th Cir. 1962), and United States v. Bowers, 202 F.2d 139 (5th Cir. 1953), cases relied on by the majority, to be dissimilar to the facts in this case. The court determined in Kinard that plaintiff-motorist, who struck a boxcar obstructing a railroad crossing, was guilty of contributory negligence. But the driver testified that he was aware of the location of the crossing, a permanent highway hazard, and another motorist driving immediately behind plaintiff and approaching the crossing observed and avoided striking the obstruction. In Bowers, the plaintiff drove his car off the highway even though he '* * * could see the edge of the road over the front of the car * * *.' 202 F.2d at 140, fn. 2.
 
 
 48
 I believe also that the trial court properly permitted the jury to consider the contractor's primary negligence. The resident engineer for the highway project testified that it was unusual for a contractor to leave small piles of gravel overnight on similar construction projects. The highway contractor knew that its employees, as well as employees of the highway department, traveled on the gravel surface of the new highway under construction during the day and after the close of the job each evening. The hazard of an unprotected, unlighted highway obstruction, such as a gravel pile, seems obvious. See McGeorge Contracting Co. v. Mizell, 216 Ark. 509, 226 S.W.2d 566 (1950); cf., Hogan v. Hill, 229 Ark. 758, 318 S.W.2d 580 (1958).
 
 
 49
 I submit the comments of Mr. Chief Justice Warren in Dick v. New York Life Ins. Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959), appropriately apply here:
 
 
 50
 'After all the evidence was in, the district judge, who was intimately concerned with the trial and who has a first-hand knowledge of the applicable state principles, believed that the case should go to the jury. Under all the circumstances, we believe that he was correct * * *.' 359 U.S. at 447, 79 S.Ct. at 927.
 
 
 
 [1]
 The Arkansas State Highway Commission appeared as intervenor and employer of the deceased at the time of the accident, has accepted liability under the Arkansas Workmen's Compensation Act, and stipulated it was liable to pay the benefits provided by the Act up to $15,078